BLAIR & ANDERSON *v*. KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD COMPANY.

1. GARNISHMENT. *Unliquidated ex delicto demands.*

An unliquidated liability for damages, because of a tort, is not subject to garnishment either at law or in equity. *Dollman* v. *Moore*, 70 Miss., 276; *Gordon* v. *Warfield*, 74 Miss., 557, distinguished.

2. SAME. *Attachment in chancery. Code 1892, § 486.*

An attachment in chancery against a nonresident debtor, under code 1892, § 486, cannot be maintained, if the only property of the nonresident in this state be an unliquidated demand for damages because of a tort committed by a resident defendant.

FROM the chancery court of Lee county.

HON. BAXTER MCFARLAND, Chancellor.

Blair & Anderson, lawyers, appellants, were complainants in the court below; Joy L. Torrey and others, nonresidents of Mississippi, and the railroad company, were defendants there. The suit was an attachment in chancery. Defendant, Torrey, a colonel of a Wyoming cavalry regiment during the recent war

with Spain, and his soldiers, were being carried by the appellee railroad company through this state, the trains running in two or more sections; the first section having stopped at Tupelo, the second ran into it, and killed and injured several members of the regiment.    Col. Torrey, on behalf of himself and the other nonresident defendants, wounded and injured soldiers, employed the appellants, Blair & Anderson, to institute suit for each of them against the railroad company for damages, paying them one hundred dollars as a retainer.    Blair & Anderson proceeded in the performance of the professional duties for which they had so been employed, but were thereafter notified by Col. Torrey that their services were no longer needed.    Thereupon Blair & Anderson filed their bill, under § 487, code 1892, to subject the alleged indebtedness of the railroad company to Col. Torrey and the other nonresident defendants, wounded and injured soldiers, to their claim for fees in and about the several employments.    The railroad company demurred, its demurrer was sustained, and Blair & Anderson, declining to amend, appealed to the supreme court.

*Clifton & Eckford*, for appellants.

Has the chancery court, either under its general jurisdiction or the jurisdiction conferred by our statutes, jurisdiction of an attachment and garnishment proceeding in a case where the debtor is a nonresident, and the resident defendant's liability arises *ex delicto* and rests in unliquidated damages ?    Although the learned chancellor below refused to take jurisdiction in such a case, we think we can show that the question has not only been answered in the affirmative by the weight of authority, but that in Mississippi it is *stare decisis*.    It was conceded by counsel for the appellees, in the argument of the case below, that the defendant, the railroad company, could not be liable as garnishee in the law court, and we insist that the law is so written; that at law the garnishee can only be held liable for such demands or debts as the defendant in attachment could

enforce in a law court against him. 8 Enc. of Law, 1102, note 5; 1160, note 3; 1161, note 4; 1148, note 1. And that a demand rested in unliquidated damages, until merged into judgment, is not such a debt as can be garnisheed at law. *Lehman* v. *Deuster*, 70 N. W., 171; *Dibrell* v. *Neely*, 61 Miss., 218. Nor can a claim or demand arising *ex delicto* be sequestered, either by attachment or garnishment at law, in cases where the tort is relied upon for the recovery. There are many cases where the tort may be waived and assumpsit maintained on the implied contract, and whenever this is the case, then attachment and garnishment will be sustained at law. *Fellows* v. *Brown*, 38 Miss., 541; *Nethery* v. *Belden*, 66 Miss., 490; *Kreisle* v. *Campbell*, 32 S. W., 581.

The procedure by attachment and garnishment at law is statutory and the words used in our statutes—*i. e.*, "debt," "indebtedness," "debtor," and "creditor" do not include a liability resting in unliquidated damages or arising *ex delicto*. 5 Am. & Eng. Enc. L., bottom pp. 145, 148–152. *Dibrell* v. *Neely*, 61 Miss., 218; *Fellows* v. *Brown*, 38 Miss., 541. 8 Am. & Eng. Enc. L., bottom pp. 1162–1163. Code of 1892, § 125, uses the following word "indebtedness;" code of 1892, § 136, uses the words "all persons indebted;" code of 1892, § 2130, uses the words, "any person who is indebted."

Here, then, there is no remedy at law. Here the bill avers the personal injuries suffered by the nonresident defendant on account of the gross negligence of the defendant the railroad company; the indebtedness of the nonresident defendants to complainants and of the railroad company to these nonresident defendants for damages for the grievous wrong inflicted. The demurrer admits the wrong and the injuries; but invokes the demurrant's own wrong and hides behind the principle which fetters the law courts, "that for a debt arising *ex delicto* you cannot maintain attachment where the tort is relied on for a recovery;" that the garnishment against the railroad rests on the attachment, and inasmuch as the non-

resident defendants could not maintain attachment at law for damages growing out of the tort, therefore there can be no recovery in a court of equity.

The railroad company sets up its own wrong and fraud, and says: "What if I did compromise and settle with your client after the suit was filed and I was garnisheed? The debt or claim against me was for unliquidated damages, and you could not sequester or impound this debt by garnishment at law so as to prevent me from making the best terms I could with the clients;" that because no procedure was provided by the law courts to prevent such a wrong, then no remedy exists in equity, on account of the same impotency.

Now, we invoke the maxim out of which has grown one of the largest jurisdictions of equity, and a jurisdiction which is most of all favored by the equity courts: "For every wrong there is a remedy." And we say that this maxim has been applied in similar cases and the jurisdiction of equity courts recognized in two recent and well-considered cases by our supreme court; that, independent of any statute, the court of chancery has general jurisdiction of this cause.

The learned counsel for appellees, in his argument, admits that if we had found some property within the jurisdiction belonging to the nonresident defendants, that then the jurisdiction would be clear under the cases of *Dollman* v. *Moore*, 70 Miss., 267, and *Gordon* v. *Warfield*, 74 Miss., 557. But the vice and error of his contention is that he is quibbling over the construction of statutes and absolutely ignoring this fundamental jurisdiction growing out of the equitable maxim above based on the principle of *ex rei necessitate*. *Barrett* v. *Carter*, 69 Miss., 593; *Gordon* v. *Warfield*, 74 Miss., 557.

To construe our statute so as to apply the words "whether the debt be legal or equitable" alone to the debt owed by the nonresident debtor himself; to hold that the debt owed by the resident garnishee must be a legal debt, would be highly tech-

76 Miss.—31c

nical and contrary to the words and context of the statute. There can be no reason for such a distinction, for the court can investigate the liability of the tort feasor on an issue between the garnishee and complainant as well as if the issue were between the original parties to the transaction.

The true construction of the statute is that in attachment proceedings in equity, wherever it was made to appear that the defendant, whether he be the nonresident defendant or resident garnishee, owed a debt which *ex æquo et bono* ought to be paid to complainant, then the chancery court, having jurisdiction of the case otherwise, would require him to do so whether the debt arose *ex delicto* or *ex contractu.* *Robinson* v. *Burritt*, 66 Miss., 356.

*Blair & Anderson, pro se.*

*Dollman* v. *Moore*, 70 Miss., 267, and *Gordon* v. *Warfield*, 74 Miss., 557, independent of the change contained in § 486, code 1892, settles the question of the right of the chancery court to entertain an attachment bill to enforce a demand *ex delicto* against the original debtor; but our opponent insists that the chancery court is without jurisdiction to proceed against a third person, or garnishee, whose liability is *ex delicto.* This is very fine hair-splitting. He construed and contended that the words "debtor and effects," and the word "indebted," in reference to garnishee, in § 486, were used strictly in a technical legal sense, and gave different meaning to the word "debt" in the preceding part. Certainly, if a court of chancery could adjudicate a pecuniary obligation of the original debtor, arising *ex delicto*, it could equally do so as to the liability of a third person. The right to pass upon the question in the one case necessarily includes the power to pass upon it in all proper cases. They are *pari passu.*

The court will observe the change made by § 486, code 1892, in the law of attachment in chancery by the insertion of the word "equitable." This word was not in previous statutes.

We think the purpose of the amendment was intended to include any claim or demand which might be worked out through judicial procedure, either legal or equitable. In other words, that in cases of attachment in chancery it was intended to abolish all distinction between debts *ex contractu* and debts *ex delicto*.

When will our chancery court and our bar cut loose from the influence of the *registra brevium* of the common law, and follow the far more enlightened and civilized judicial conduct of the Roman prætors? This is a day of advancement, and why should there not be, if necessary for wise and just purposes, an advancement in the law? At least a fuller development and a more liberal application of its fundamental maxims? Nothing can stop the United States in their career of expansion. The decree has gone forth. Let not the future historian be compelled to write of the law of the present day, as has been written of the common law of the past, by the most enlightened commentators, that it was a narrow and barbarous code, but the glorious handmaid of our great government in its work of freedom, independence and humanity.

*J. W. Buchanan*, for appellee railroad company.

The real and vital question for this court to determine is as to whether or not, admitting that the railroad was liable to Torrey and others injured by reason of the alleged negligence on the part of the railroad, it was such an indebtedness to nonresident defendants as is contemplated by §§ 486, 487, code of 1892.

So far as Torrey and other defendants are concerned, the allegations in the bill are sufficient for the chancery court to entertain a bill as to them if there was any property found in the state by which the court could take jurisdiction of the parties. This court, in the case of *Gordon* v. *Warfield*, 74 Miss., 557, lays down the doctrine that the chancery court has jurisdiction of a bill filed against a nonresident of the state having property here, to redress a wrong, even where the damages suffered by the complainant in the bill are unliquidated.

However, there is a vast difference between that case and the one at bar. In the Gordon-Warfield case real estate was levied upon in the attachment proceedings, and the only question was whether or not the chancery court could take jurisdiction of a suit for unliquidated damages, it having, by the levy on the real estate, obtained jurisdiction of the subject-matter and of the person. The court in that case held merely that, under the broad principles of equity jurisprudence, there being no adequate remedy at law, it was a case where a court of equity could take jurisdiction.

Even admitting that the railroad company may be liable for damages to its co-defendants in an action of trespass, still we say that this liability is such an uncertain and intangible thing that it cannot be reached by garnishment and was not contemplated under § 487.

This court, in the case of *Harris* v. *Hutcheson*, 65 Miss., 13, shows plainly the distinction between claims and liabilities where it says: " If the decedent is liable in damages for a trespass or the like, or to account as a partner, there could not be any registration of a claim against his estate. This shows the distinction between liabilities and claims, which latter are required to be registered, a distinction pointed out by Sharkey, C. J., in *Gordon* v. *Gibbs*, 3 Smed. & M., 473."

The term "indebtedness " is not as broad a term as " claims," and if there is a distinction between claim and liability there certainly is a distinction between "an indebtedness " and "a liability."

This suit is an effort to subject unliquidated damages alleged to be due by the railroad company to its co-defendants to appellant's claim against Torrey and others. That a claim for unliquidated damages cannot be garnisheed in a court of law is well settled in the case of *Dibrell* v. *Neely*, 61 Miss., 286. This court there clearly and unmistakably lays down the proposition that a claim for unliquidated damages cannot be garnisheed.

That was a claim where Bean sued Neely for $2,000 damages for breaking and entering his close. Dibrell and others had a judgment in the justice court for $150 against Bean. During the term of the circuit court Bean recovered judgment against Neely, and Dibrell soon thereafter garnisheed on his judgment against Bean. During the same term of the circuit court a motion was made for a new trial, which was granted by the court. Shortly after that Bean and Neely compromised their suit, and Neely paid Bean $80 in settlement. In the justice court which issued the writ of garnishment in favor of Dibrell Neely answered that he owed Bean nothing. The justice of the peace rendered judgment in favor of Neely, which was affirmed by the circuit court, and appealed to the supreme court by Dibrell, and the supreme court rendered the following opinion by Chief Justice Campbell:

"Until final judgment in favor of Bean against the appellee on his claim for damages, she could not be said to be his debtor, so as to be held as garnishee. The service of a summons on her as garnishee could not prevent her from moving for and obtaining a new trial, or deprive her of the right to obtain a new trial on any terms she could make with her adversary, and when the judgment was set aside she was not indebted to Bean, and therefore not liable as garnishee. To deny her the right to bargain with Bean as she saw fit, so long as the litigation between them was not finally concluded by judgment against her, would be to prejudice her as a litigant with him by summoning her as garnishee, which is not allowable. Although she agreed to pay a sum of money to extinguish the demand, it was for a demand not subject to garnishment when the payment was made. During the term the judgment was subject to be set aside, and until set aside during the term must be regarded as partaking of the nature of the demand on which it was founded. See Drake on Attachments, sec. 548, and cases cited." *Dibrell* v. *Neely*, 61 Miss., 286.

---

---

WHITFIELD, J., delivered the opinion of the court.

In *Dollman* v. *Moore*, 70 Miss., 267, the liability was an ascertained fixed debt, and the garnishee could and did answer, admitting that it owed the sum certain due.

In *Gordon* v. *Warfield*, 74 Miss., 557, the attachment in chancery was levied on land of the nonresident defendant, and it was held that in such case the chancery court had jurisdiction to inquire into and ascertain the liability arising *ex delicto* even, and enter a decree therefor, as between the original parties, and decree a sale of the defendant's land to pay the amount of the liability when ascertained. There was no garnishment in that case, and no question, of course, arose as to the right to use garnishment process in a case of alleged liability where the damages are unliquidated.

In *Dollman* v. *Moore* the garnishee could easily answer, because the debt was fixed. How could the garnishee answer in a case like this, when the question whether it owes anything, and if anything, what amount, is unknown, and cannot be known till a judgment shall have been rendered in the principal case? The liability here is one that is in its very nature not subject to garnishment at law or in equity. It is not that equity will permit no wrong to exist without a remedy, but that though equity permits no wrong to exist without a remedy, it still exacts the use of the remedy appropriate to right the wrong. Because there is, in a given case, no remedy at law, equity does provide for such case a remedy, but it provides for such case a remedy appropriate to that case. That is the distinction clearly taken by learned counsel for the appellee and upheld by the chancellor. The bill is framed under § 487 of the code of 1892. But whether framed under that section or under the general equity power of the court, what it distinctly seeks to do is to use certain particular process—garnishment—to hold a liability arising *ex delicto*, the amount of which is unascertained, when the very nature of the writ and of the liability shows that garnishment is not so usable.

*Affirmed.*