S. J. NASH, Appellant, v. AMERICAN INSURANCE COMPANY, Appellee.

INSURANCE:   Action on Policy—Fire Insurance—Cause of Injury.
1   Evidence reviewed, in an action on a fire insurance policy for damages to a silo, and held sufficient to go to the jury on the issue as to whether the injury to the silo was caused by fire, and not by the generation or explosion of gas vapor.

INSURANCE:   Avoidance or Forfeiture of Policy—Increased Hazard—Fire in Concrete Silo.   The building of a fire in the center
2   of a silo on a concrete floor did not invalidate a policy of fire insurance having a provision making the policy void "if the hazard be increased by any means within the knowledge of the insured," such provision not having reference to mere temporary acts of negligence, or ordinary acts of ownership.

INSURANCE:   Action on Policy—Defenses—Reckless Negligence.
3   While mere faults or negligence of the insured, unaffected by any fraud or design, do not constitute a defense to an action on a fire insurance policy, yet this rule will not excuse extreme recklessness and inexcusable negligence on his part, the consequences of which must have been obvious to him at the time

INSURANCE:   Action on Policy—Fire Insurance—Reckless Negligence of Insured.   Evidence reviewed, in an action upon a fire
4   insurance policy for damages to a silo, and held sufficient to go to the jury on the question whether the insured, in building a fire within the silo in the center of the concrete floor, was guilty of such gross recklessness or negligence as that the jury could have found that he acted by design in burning the silo.

*Appeal from Warren District Court.*—GEORGE B. LYNCH, Judge.

OCTOBER 25, 1919.

REHEARING DENIED JANUARY 20, 1920.

ACTION for indemnity stipulated in fire insurance policy resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals.—*Reversed.*

*Berry & Watson,* for appellant.

*F. P. Henderson,* for appellee.

LADD, C. J.—I. The policy on which this action was brought covered a silo when it was damaged by fire. The defendant denied liability on these grounds: (1) That plaintiff had increased the hazard, thereby rendering the policy void; (2) that the damages were caused by an explosion of vapor or gas, and not by fire; and (3) that the damages were consequent on the reckless conduct of the plaintiff. The question for consideration is whether any of these defenses were conclusively established.

The silo was 30 feet high, and 18 feet in diameter, resting on a concrete base. It was of frame construction, with one-piece timbers 30 feet long, and a galvanized iron roof, one or two pieces of which were loose. It had been filled with ensilage, the fall before, but the ensilage had been fed out until 10 or 12 feet from the bottom, when it began to freeze. Plaintiff then cut the ensilage from the center to the bottom, leaving that which had been frozen, about two feet in thickness, on the outside. This left an open space in the center, 12 or 14 feet in diameter. He then cut through this to a door, and, in the afternoon of February 1, 1918, with his son, entered through the open door, and started a fire in the center on the concrete floor. After the fire had burned a few minutes, he went for more fuel, and, upon his

return, noticed that the fire had blazed up more than he had anticipated. Fuel was not added, and, after cautioning his son to remove his overcoat, he observed that "there were some of those chunks that were iced when we built the fire," had dried so that he "saw one kind of curl up." For the first time, he then apprehended danger, remarked that it was getting pretty warm, and, as his son was about to enter the silo, to push the fire back and settle it, the fire caught the shucks and silks "hanging around on the ensilage," and "blazed round and round until it got onto this dry material above the ensilage." The witness explained that, when the knives of the ensilage cutter became dull, the shucks will hang on them, and the cutter is stopped, once in a while, to clear the knives of these husks. The ensilage had been frozen several days, and the witness thought the husks may have dried some in the meantime; that the fire burned about 25 minutes; that it flashed up quick, but not like an explosion; that it did not burn as though it might have been vapor or gas. The side boards or timbers of the silo were burned down different distances from the top, the hoops fell off, and, after a few days, it fell.

The recital of the evidence indicates plainly enough that the court might not have found that the injury to the insured property was caused by the generation or explosion of gas vapor. Quite as satisfactory an explanation is that heating the air within the silo caused a draft upward, from the cold air coming in at the open door, and that the fire first caught the husks and silks, and was carried up by the draft.

1. INSURANCE: action on policy: fire insurance: cause of injury.

II. The policy provided that it should become void "if the hazard be increased by any means within the knowledge of the insured." The trial court held, and we think rightly,

that building the fire in the silo did, in fact, increase the hazard. Was this increase of hazard such as was contemplated by the clause quoted? If so, whatever the insured

**2. INSURANCE: avoidance or forfeiture of policy: increased hazard: fire in concrete silo.**

may have done, though temporary or incidental in its nature, in the use of his property, having that effect, must have rendered the contract invalid. Such is not the necessary construction of the clause quoted. Similar clauses have been held by other courts to have reference to changes in the use, situation, or exposure of the property, permanent in their nature. In *Angier v. Western Assur. Co.*, 10 S. D. 82 (66 Am. St. 685), the stipulation was that "this entire policy shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured," and the court held that the term " 'increase of hazard' denotes an alteration or change in the situation or the condition of the property insured which tends to increase the risk. These words imply something of duration, and a casual change of a temporary character would not ordinarily render the policy void." In *First Cong. Church v. Holyoke Mut. F. Ins. Co.*, 158 Mass. 475 (35 Am. St. 508), and *Harris v. Columbiana Ins. Co.*, 4 Ohio St. 285, 286, the rule was announced that a casual or temporary change will not ordinarily be sufficient to void a policy under this provision. See, also, *Williams v. New England F. Ins. Co.*, 31 Me. 219; *Westchester Fire Ins. Co. v. Foster*, 90 Ill. 121. The provision does not prohibit the owner from exercising the usual and ordinary acts of ownership. *Jolly's Admrs. v. Baltimore Eq. Soc.*, 1 Harris & Gill (Md.) 295 (18 Am. Dec. 288); *Peterson v. Mississippi Valley Ins. Co.*, 24 Iowa 494. Nor does it include mere acts of negligence on his part, unless these are so continuous and of such a nature as to increase the hazard more or less permanently. It is to be presumed that the contract was entered into with reference to the character of the property and the owner's use of it,

and it would greatly impair the advantages of insurance, were trivial or temporary variations permitted to defeat the contract. *Siemers v. Meeme Mut. Home Prot. Ins. Co.,* 143 Wis. 114 (139 Am. St. 1083) ; *Adair v. Southern Mut. Ins. Co.,* 107 Ga. 297 (73 Am. St. 122, 45 L. R. A. 204) ; *First Cong. Church v. Holyoke Mut. F. Ins. Co.,* 158 Mass. 475 (19 L. R. A. 587) ; 14 R. C. L. 1145, Sec. 327. *Davis v. Western Home Ins. Co.,* 81 Iowa 496, seems opposed to this doctrine. The policy there construed provided that it should be void "if there be any change in the exposure by the erection or occupation of adjacent buildings, or by any means whatever in the control or knowledge of the assured." A corn sheller, propelled by an engine and boiler, was placed quite near two corncribs, and fire, originating from the engine, burned one of them; and the court held, reversing the trial court, that this was within the clause quoted, and rendered the policy void. No attention appears to have been given to the thought that the clause had reference to changes more or less permanent in their nature, and not to those merely incident to the ordinary use of the property; nor are authorities elsewhere referred to. The decision is contrary to the great weight of authority, and, as we think, was overruled in *Des Moines Ice Co. v. Niagara Fire Ins. Co.,* 99 Iowa 193, 200. There, the president of the company which owned the property started a fire in or near one of the buildings, for the purpose of burning some rubbish or debris, and the fire spread and burned the insured building. The insurer urged that this was an increase of the risk or hazard, and rendered the policy void, under the stipulation "if the hazard be increased by any means within the control or knowledge of the assured." The court ruled otherwise, alluding to the well-settled rule that the mere negligence of the assured afforded no defense to an action on an insurance policy, and pointed out that, in *Davis v. Western Home Ins. Co.,* supra, there "was the setting-up of a business in

dangerous proximity to the insured property. It does not appear how long the operation of the engine was carried on before the property was destroyed." This distinction was thought sufficient; but we are not ready to say that the temporary use of a cornsheller, operated by an engine to shell his corn (in that case, 1,900 bushels in ear), located so as to accomplish that object, is such a permanent increase of hazard as was contemplated in the clause quoted. On the contrary, it was what might well have been anticipated would happen in the course of the owner's work about the corncribs, and should have been regarded as temporary, and incidental to the use of the cribs. In principle, we regard the cases as identical, and are content in ruling that *Davis v. Western Home Ins. Co.,* supra, is overruled by the later case. The case at bar is ruled by *Des Moines Ice Co. v. Niagara Fire Ins. Co.,* supra, which is in harmony with the decisions from other states heretofore cited. Setting the fire was not in violation of the clause contained in the policy.

III. The defense that lighting the fire in the silo was so reckless and so grossly negligent that this might have been done by design, was not conclusively established by the evidence. The rule that mere faults or negligence of the insured, unaffected by any fraud or design, do not constitute a defense to an action, or an insurance policy, is well settled. *Des Moines Ice Co. v. Niagara Fire Ins. Co.,* supra. But, as said in *Mickey v. Burlington Ins. Co.,* 35 Iowa 174:

3. INSURANCE: action on policy: defenses: reckless negligence.

"This rule will not excuse extreme, reckless, and inexcusable negligence on the part of the assured, the consequence of which must have been palpably obvious to him at the time. * * * The gross degree of negligence, and its inexcusable character, coupled with the knowledge of its certain effects, ought, it would seem to us, to raise a presumption that the party intended the obvious and necessary con-

sequences of his action, which, at the time, were apparent to him."

It cannot be said, as matter of law, that the plaintiff was guilty of such gross negligence or recklessness as that the jury could only have found that he acted by design in burning the silo. His testimony that he did not appreciate the danger is not disputed, and the circumstances were not such as to necessarily compel a different conclusion. The court erred in directing a verdict for the defendant and in entering judgment thereon.—*Reversed.*

4. INSURANCE:
action on poli-
cy: fire insur-
ance: reckless
negligence of
insured.

EVANS, PRESTON, and SALINGER, JJ., concur.