CHARLES WHITE, Appellee, v. HOME MUTUAL INSURANCE AS-
SOCIATION OF IOWA, Appellant.

**INSURANCE:** Non-Necessity for Reformation. Reformation of a
1    policy, in order to correct a mistaken description of personal
property, is not necessary, when the property may be and is
definitely and unquestionably identified by extrinsic evidence.
Especially is this true when the description is inherently am-
biguous.

**INSURANCE:** Fraud in Obtaining Policy. An insurer may not
2    avoid a policy for misrepresentation as to the manner in which
the insured acquired the policy, unless the record reveals some
dishonest motive, or the fact that the insurer has been misled.

**INSURANCE:** Representation as to Location of Property. A
3    representation that a motor vehicle was usually kept in a
"private garage" is not violated by keeping the vehicle in a
shed or "lean-to" on the insured's barn, even though the shed
is also used for housing other vehicles, and even though a por-
tion of the shed is fenced off for stock.

**INSURANCE:** Estoppel in re Location of Property. An insurer
4    who accepts a premium, with full knowledge of the nature of
the place where an insured automobile is to be kept, may not
avoid liability on the plea that the insured described the place
as a "garage," when it was not strictly such.

**INSURANCE:** Negligence of Insured. The fact that a fire was
5    caused by the mere negligence of the insured is no defense to
an action on the policy.

*Appeal from Lucas District Court.*—FRANCIS M. HUNTER,
Judge.

OCTOBER 19, 1920.

ACTION on a policy of insurance for loss of an automobile
resulted in a decree as prayed. The defendant appeals.—
*Affirmed.*

*Holly & Holly,* for appellant.

*William Collinson* and *J. D. Threlkeld,* for appellee.

LADD, J.—The defendant, a mutual insurance company, issued its policy January 9, 1917, covering an automobile described as:

"Made by Velie Co., Year 1914, No. of cylinders 4, Car No. 17217, Model ......, Horsepower ......25. How equipped,—Fully. Car is usually kept in a private garage on Lot ......, Block ...... in ...... Addition to ...... or on ...... quarter section, Township 71, Range 21, in Benson Township, Lucas County, Iowa. Kind of work for which car is used, family car. Is the car new or secondhand, 2 years old. Amount paid for car, including equipment, $800. Year of purchase, 1916. Month, October. Was the consideration cash or trade? Both. If trade, describe fully what was given in exchange. Ford car and cash consideration."

1. INSURANCE: non-necessity for reformation.

The automobile was, in fact, kept in a lean-to to the insured's barn, and was burned with the barn on the February 10th following the issuance of the policy. Proofs of loss were furnished, but the company refused payment of the loss, on the ground that the car destroyed was not that of insured. Suit was begun, praying that the policy be reformed by correcting the number thereof, and that judgment be entered for the indemnity stipulated.

I. The evidence disclosed that, when the application was signed by the insured, the number of the automobile was not inserted therein, as he did not remember it. He and the agent arranged that this should be done by the latter later on; and, on the morning following, the insured notified the agent, on information furnished by his son, that the number was 17217; and this number was written in the application by the agent. It was discovered after the loss, though before the petition was filed, that this number was not that of the license plate furnished by the secre-

tary of state, and plaintiff amended his petition by alleging the facts, and praying that the contract be reformed by correcting the number so as to read 19253. Reformation was decreed, as prayed, and it is said not to have been warranted by the record. Were this to be conceded, it does not follow that recovery should have been denied; for reformation of the instrument was unnecessary. The number of the automobile was inserted merely for the purpose of identification. The insurance was intended to be and was of the automobile; not of the number plate. It was the car insured quite as certainly, if fully identified, without resort to the number. There was such identification; for the evidence, without conflict, showed that the automobile burned met the description contained in the policy in all other respects, was the only automobile owned by the insured, and was the one intended to be covered by the policy. When the insured property can be so identified, there is no occasion for correcting the description contained in the policy covering personal property. Many courts of respectable authority hold that reformation of the description of realty, in event of mistake therein, is unnecessary where the buildings insured are identified by extrinsic evidence. *State Ins. Co. v. Schreck*, 27 Neb. 527 (20 Am. St. 696, 6 L. R. A. 524); *Kansas Farmers' Fire Ins. Co. v. Saindon*, 52 Kan. 486 (39 Am. St. 356). Moreover, the description by number was ambiguous; for it was shown to have a serial number, given it at the factory, and that of the license plate, and no indication was made as to which was intended in the application or policy. In these circumstances, extrinsic evidence was rightly resorted to, to show what was intended (*Eggleston v. Council Bluffs Ins. Co.*, 65 Iowa 308), and, as the automobile burned was shown to have been covered by the policy, there was no error at this point.

II. The company interposed the defenses: (1) That it was induced to issue the policy by fraudulent representations; (2) that the automobile was not kept in a garage, as represented; (3) that the value of the car did not exceed

$100, though represented to be worth $800; and (4) a general denial.

The petition alleged fraud, in that the application for insurance represented that the car insured was obtained by exchanging a Ford automobile and money therefor; whereas, in fact, the Ford car, with cash, was first

**2. INSURANCE: fraud in obtaining policy.**

exchanged for a Crow Elkhart automobile, and the latter, with boot money, traded for the one insured. Possibly, the son of the insured, who did the trading, found it necessary, in order to substitute the Velie automobile for the Ford car, to first exchange for the Crow Elkhart car, and then for that in question. The answer may have been made on this theory. Whether so or not, the record contains nothing tending to show a dishonest motive, or that the insurer was misled by the inaccuracy of the answer. The court rightly denied the charge of fraud.

III. The application recited that the automobile was "usually kept in a private garage." The evidence disclosed that he kept it in a shed or lean-to on his barn, and it is

**3. INSURANCE: representation as to location of property.**

argued that this was not a garage. The definition of this word, found in Webster's dictionary, is "a place for housing automobiles." The Century dictionary says it means "a station at which motor cars can be sheltered, stored, repaired, cleaned, and made ready for use; also, a place for private storage for a motor car, a stable for motor cars." In the addenda to the Standard dictionary, it is defined as "a building, as a stable or shed, for the storage of automobiles and other horseless vehicles." As remarked in *Diocese of Trenton v. Toman*, 74 N. J. Eq. 702:

"These garages occupy, with relation to automobiles, the same place that stables do with regard to horses."

But the word "garage" is not to be regarded as synonymous with "stable," nor is a clause in a contract prohibiting the erection of a "stable" to be held breached by the construction of a garage thereon. *Riverbank Imp. Co. v. Ban-*

*croft*, 209 Mass. 217 (34 L. R. A. [N. S.] 730, Ann. Cas. 1912B 450); Babbitt on Automobiles (1911 Ed.), Section 628; *Smith v. O'Brien*, 46 Misc. Rep. 325 (94 N. Y. Supp. 673). The word "garage" was recently appropriated from the French language, there meaning, "keeping under cover," or "a place for keeping," and, as employed in English, is accurately defined by Webster's dictionary, substantially like the definition in the Century dictionary, as "a place where a motor vehicle is housed and cared for." To be such, the place need not be apart from other buildings, though that may be the more common and appropriate way. If the "place" be in a "lean-to," attached to another building, as a barn or corncrib, constructed for the purpose, or having been erected as set apart for the housing of the automobile, it is, none the less, a "garage," within the meaning of that word in either language. In French, the word has reference to the place of keeping wagons and other vehicles of transportation, as well as automobiles; but in English, it appears to have been restricted to motor vehicles.

The automobile in question was kept in the front end of a lean-to 16 feet wide and 26 feet long, attached to plaintiff's barn. By its side was kept a buggy, and there was a fence or partition back of it, to separate the vehicles from the stock. As to the automobile, this was a "private garage," within the meaning of that expression found in the application. Moreover, the insurer was advised as to the kind of place in which the automobile was being kept. Plaintiff testified that he told the agent who filled out the blanks in the application that the automobile was kept in "a shed that joined onto the barn," and the agent's memory was that the applicant "said the car was usually kept in a shed, I think he termed it, near the barn." Apparently, the agent was not certain of the precise words used; and, as the plaintiff's version harmonizes with the facts, and is the more probable, we are inclined to the conclusion that the insured told the agent that the car was

4. INSURANCE: estoppel *in re* location of property.

kept in a shed that joined onto the barn. If so, the company, having accepted the premium and issued the policy with knowledge of the place where the automobile was kept, must be deemed to have waived any misstatement with reference to its locality. See *Key v. Des Moines Ins. Co.*, 77 Iowa 174, and other like cases, too numerous for citation.

The defenses interposed are without merit. The evidence left no doubt as to the identity of the automobile insured, nor was it such as to warrant any other conclusion than that the loss was through no fault on the part of the insured. The proof failed to show excessive valuation, or any bad faith on the part of the insured. If he were negligent, that would not constitute a defense. *Nash v. American Ins. Co.*, 188 Iowa 127. The inspector of defendant seems to have been oversusceptible to suspicions, and inclined to "see things." We are satisfied that he erred in concluding that the automobile was equipped with six, instead of four, cylinders; that the serial number was on the right side of the engine, instead of the left side; that the number was 94402, instead of 94A02, found on the left side of the engine; and that a number had been chiseled off either side; and in saying that the insured had told him he obtained the automobile from a person in Illinois, instead, as was conclusively proven, from one Mercer, living at or near Chariton. It is likely that these mistakes led to the interposition of defenses unsupported by the evidence.

5. INSURANCE: negligence of insured.

The decree of the district court is—*Affirmed*.

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.