Arnold G. Fraiman, J.
By this action, plaintiff Dawn Frosted Meats, Inc. seeks (1) reformation of an automobile insurance policy issued by defendant Insurance Company of North America (INA) so as to include Dawn Frosted’s 1956 Chrysler Imperial, Identification Number CE563622, under the policy coverage, and (2) a declaratory judgment that INA is obligated to defend and indemnify Dawn Frosted in all actions brought against it as a result of an accident involving that vehicle. By way of cross claim and counterclaim, INA demands that the *996 court declare that it is not obligated to defend any action or claim against Dawn Frosted arising out of the accident, or to pay any judgment which may be recovered against Dawn Frosted as a result of the accident. The intervenor plaintiffs are persons who have obtained a judgment against plaintiff Dawn Frosted arising out of the accident and who seek essentially the same declaratory relief sought by Dawn Frosted. The case was submitted to the court on an agreed statement of facts.
On April 12, 1965, Dawn Frosted ordered through its broker an automobile liability insurance policy from INA. The order, as placed, sought coverage for the following vehicles:
1956 'Chrysler Imperial ID#CE568917
1956 Chrysler Imperial ID#CE5610343
1955 Chrysler Imperial ID#0557082
1960 Chevrolet Truck ID#OC14513114702
1963 International Refrig. Truck ID#SB290799 E
1956 Chrysler Imperial ID#CE568149
A binder covering the six specified vehicles was issued by INA three days later. In fact, on April 12, 1965, Dawn Frosted owned only five vehicles, identified as follows:
1960 Chevrolet Truck ID#OC145B114702
1963 International Truck ID#SB290799E
1956 Chrysler New Yorker ID#N5629741
1956 Chrysler Imperial ID#CE5610343
1956 Chrysler Imperial ID#OE563622
On June 19, 1965 the Chrysler Imperial bearing identification number CE563622, which was one of the automobiles owned by Dawn Frosted on April 12, 1965 but which was not listed on the policy issued by INA, was involved in a serious accident. After receiving due notice of the accident, INA advised Dawn Frosted on July 21, 1965 ‘ ‘ that there was no insurance coverage carried by this company for the vehicle involved in the accident on June 19, 1965 ” and thereafter it has refused to defend Dawn Frosted against the various claims and actions brought against it arising out of the accident.
As indicated, on April 12, 1965 Dawn Frosted owned only the five vehicles listed above, including the 1956 Chrysler Imperial bearing identification number CE563622. Not only was that vehicle and another one, a 1956 Chrysler New Yorker, which Dawn Frosted also owned, not listed on the policy issued by INA, but the policy as issued included coverage for three Chrysler Imperials which Dawn Frosted did not own- at any time between the date the policy was issued and the date of the *997 accident. It is conceded by Dawn Frosted that the policy as written by INA was exactly as requested by Dawn Frosted through its insurance broker.
For the period April 12, 1965 through July 23, 1965, when INA canceled the policy, premium charges were computed by INA and duly paid by Dawn Frosted on the basis of insurance coverage for the six vehicles named in the policy.
It is Dawn Frosted’s contention that both it and INA intended to insure all of the vehicles owned by Dawn Frosted on April 12, 1965 and that the policy reflects their “mutual mistake” as to the identification of those vehicles. Because of this alleged mutual mistake, Dawn Frosted seeks reformation of the policy so that it may reflect the true intention of the parties. INA, on the other hand, denies that there was any such ‘ ‘ mutual mistake ’ ’ and insists that it ‘1 insured exactly what it was asked to insure,” so that reformation is neither appropriate nor available.
Although there is a presumption that a written instrument expresses the intention of the parties (Eastern Air Lines v. Trans Caribbean Airways, 29 A D 2d 379, 382 [1st Dept., 1968], affd. 23 N Y 2d 709 [1968]) the Court of Appeals stated many years ago that “It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake of the parties however induced, or the mistake of one party and fraud of the other, a court will reform the instrument so as to make it conform to the actual agreement between the parties.” (Albany City Sav. Inst. v. Burdick, 87 N. Y. 40, 47 [1881].)
In reformation cases, as in most cases where the interpretation and enforcement of contracts is involved, it is the actual intentions of the parties which are of paramount importance. And if the writing purporting to reflect those intentions fáils to do so because of a mutual mistake, a court of equity will reform the writing to reflect the true intention of the parties. (Lewitt & Co. v. Jewelers’ Safety Fund Soc., 249 N. Y. 217 [1928]; see, generally, 6 N. Y. Jur., Reformation of Instruments, §§ 23-24, and cases cited therein.) However, “ [b]efore plaintiff 1 can be granted reformation, [it] must establish [its] right to such relief by clear, positive and convincing evidence. Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error ’ ”. (Eastern Air Lines v. Trans Caribbean Airways, supra, at p. 382, quoting Amend v. Hurley, 293 N. Y. 587, 595 [1944], emphasis omitted.)
*998 In determining the intent of the parties in the instant case, the reasoning of the court in Tomato Prods. Co. v. Manufacturers’ Liab. Ins. Co. (203 App. Div. 678 [1st Dept., 1922]) is directly relevant. There, the defendant insurer had issued a policy to the plaintiff, pursuant to an application prepared by plaintiff’s broker, covering an “ automobile truck” which was identified as bearing engine number 16501. In fact, plaintiff never owned a truck bearing that number; instead, the truck it owned bore engine number 16496. This truck subsequently was involved in an accident, and upon learning of the discrepancy in engine numbers, the defendant insurer disclaimed coverage. Plaintiff sued for reformation of its policy to cover the truck it actually owned, but the trial court, after trial, dismissed the complaint on the merits. In unanimously reversing, the decision of the trial court, the Appellate Division used language particularly appropriate to the facts in the instant case: “ It is undisputed that the plaintiff, during the period covered by the policy, owned but one car and that was No. 16496. It was, therefore, clear that through some mistake the wrong number was given, although in other details the car was accurately described in the policy and was readily identifiable. There can be no doubt that defendant would have insured the car of the plaintiff regardless of the number of the engine, since its risk was not in the slightest degree affected by the number of the engine, which doubtless was merely intended as an additional means of identification of the particular car insured, where the insured owned-more than one ear. Nor can there be any doubt that both parties must have understood that the car insured referred to the only car which plaintiff owned, and that they acted under the belief that the number of the engine was accurately described in the application.” (Id. at p. 679.)
In the present case, none of the vehicles actually owned by Dawn Frosted was older than any of those listed in the policy, and in fact each of the vehicles actually owned finds a corresponding vehicle of identical date and make listed in the policy. Thus, here too, as the court stated in the Tomato Prods. case (supra, p. 679) “There can be no doubt that defendant would have insured the car[s] of the plaintiff regardless of the number of the engine, since its risk was not in the slightest degree affected by the number of the engine, which doubtless was merely intended as an additional means of identification of the particular car[s] insured ”.
Furthermore, since it was stipulated that at the time the policy was entered into Dawn Frosted owned only the five vehicles described above, there can be no doubt “that both *999 parties must have understood that the car[s] insured referred to the only car[s] which plaintiff owned, and that they acted under the belief that the number of the engine [s] [were] accurately described in the application. ’ ’
INA’s contention that it intended to insure only the specific vehicles listed on the application, rather than the vehicles then actually owned by Dawn Frosted but not listed on the application, makes no sense. Surely, if one of the vehicles listed in the policy but not owned by Dawn Frosted were involved in an accident, it may be assumed that INA would have promptly disclaimed coverage, and rightly so. The inescapable conclusion is that both INA and Dawn Frosted intended that the policy was to cover all the vehicles then actually owned by Dawn Frosted. This is further evidenced by the allowance of a “ fleet credit ’ ’ by INA to the insured. The credit, amounting to 1.7 % of the total premium, was allowed pursuant to rule 9 of the General Rules Section of the Manual of Rates filed with the State Superintendent of Insurance by the Insurance Rating Board. Rule 9 provides that a premium reduction shall be allowed for vehicles insured under a “ fleet plan.” The amount of the reduction is determined by the total number of vehicles insured, whether or not by the same carrier. Under rule 9, a premium reduction of 1.7 % is allowed for a fleet of six vehicles.
Even if the credit was inappropriate under the circumstances, since in fact Dawn Frosted only owned five vehicles at the time, the allowance of the credit by INA nevertheless necessarily reflected its intention to insure all of Dawn Frosted’s vehicles. Under rule 9 the fleet credit is determined by the total number of insured vehicles owned by the insured. In New York, this, of necessity, would include all vehicles of the insured. Thus, by allowing a fleet credit to Dawn Frosted, it must be assumed that INA intended that its policy was to cover all of the vehicles then owned by Dawn Frosted.
In cases decided in this and other jurisdictions containing fact situations somewhat analogous to that in the instant case, the courts have reached similar conclusions concerning the intention of the parties. Thus, in White v. Home Mut. Ins. Assn. of Iowa (189 Iowa 1051 [1920]), the insurer had disclaimed fire insurance coverage on the ground, among others, that the insured had supplied it with the wrong license plate number for the car burned in the fire. The insured sought reformation of the policy to reflect the correct number. The Supreme Court of Iowa, in holding that the policy covered the car in question, stated: ‘ ‘ The insurance was intended to be and was ^ of the automobile; not of the number plate. It was the car insured *1000 quite as certainly, if fully identified, without resort to the number. There was such identification; for the evidence, without conflict, showed that the automobile burned met the description contained in the policy in all other respects, was the only automobile owned by the insured, and was the one intended to be covered by the policy.” (Id. at p. 1053.)
Similarly, in Kostecki v. Zaffina (384 Ill. 192 [1943]) the insurer disclaimed coverage where the policy in question purported to insure a 1936 Plymouth although in fact the insured owned a 1937 Plymouth. The Supreme 'Court of Illinois held that the company could not avoid liability for that reason, stating in part: “ It appears that [the insured] owned only one automobile during the entire time that this policy was in force, namely the 1937 Plymouth four-door sedan, engine No. P4-38159 and serial No. 10115840, and it appears that he was driving this automobile at the time of the accident. It is established by the evidence that the year model of the car is of no importance in determining the rate charged for the policy, and it is also established that the premium rate was the same as if the number of [the insured’s] car had been correctly stated in the policy * * * we conclude the weight of authority to be that where the insured owns only one car at the date of issuance of a policy, and that car is involved in an accident, inaccuracies in the statement of the motor and serial numbers in the policy will not relieve the insurer of liability ”. (Id. at pp. 195-198.)
In Musso v. American Lumbermen’s Mut. Cas. Co. (14 Misc 2d 450 [Sup. Ct., Niagara County, 1958]) the insurer disclaimed coverage because its policy listed a 1948 Ford as the covered vehicle while in fact the insured had traded in that car for a 1951 Ford, which was involved in an accident. In the course of its opinion, which also concerned issues other than the misdescription of the covered vehicle, the court reviewed the policy issued by the insurer and noted that it contained coverage for “temporary substitute ” and “newly acquired” automobiles (as does the policy in the instant case). The court then stated:
‘ ‘ Here, the 1951 Ford was a newly acquired automobile ’ and also meets the test of a ‘ temporary substitute automobile ’ within the meaning of this policy. At no time did this policy cover Carmen Musso for more than one automobile. The policy was primarily designed to protect the named insured, provided he did not unduly increase the risk assumed by the defendant.
“ The 1951 Ford involved in the accident was three years newer and apparently safer than the 1948 Ford named in the policy; thus, the risk was decreased accordingly. It follows that Carmen Musso, as named insured, is entitled to all of the bene-
*1001 fits of his insurance contract with the defendant.” (Id. at p. 453.)
Finally, in Country-Wide Ins. Co. v. Wilson (N. Y. L. J., May 23, 1968, p. 17, col. 2) a case very similar to Musso, the insurer disclaimed, coverage on the ground that its policy purported to cover a 1956 Oldsmobile while in fact the insured owned a 1959 Oldsmobile at the time he obtained the insurance in question. This court, per Mr. Justice Posted, stated: “ In its policy, plaintiff [insurer] agreed with the insured to pay on behalf of the insured all sums ‘ arising out of the owned automobile or any nonowned automobile.’ It also undertook to insure him where a temporary substitute automobile was involved or a replacement vehicle. In said policy he was the named insured;' such was the main thrust of the insurance coverage. It is true that the description of the owned automobile was incorrect as at the time of the placing of the insurance he owned a 1959 Oldsmobile not a 1956. However, it was the intention of the insurer to cover him and if the vehicle was incorrectly described, such error can be corrected under the equitable powers of the court.” (Ibid.)
While each of the cited cases involved ‘1 one-car ’ ’ insureds, it is apparent that the fact alone did not compel the court’s conclusion. Instead, in each instance the court examined both the facts and circumstances surrounding the grant of insurance and the policy itself in order to determine the actual intent of the parties. And where it was apparent, as here, that the insurer would have provided coverage for the vehicle actually owned, and in the absence of a positive showing of bad faith on the part of the insured, the courts have unhesitatingly reformed the policy.
Still other cases involving ‘1 multi-vehicle ’ ’ insureds further • support the conclusion reached here.
In Geddes Undertaking & Embalming Co. v. Home Acc. Ins. Co. (172 La. 598 [1931]) the plaintiff undertaker secured threé policies from the ■ defendant covering a total of 13 cars, which was the entire fleet of cars owned by the plaintiff at that time. Bach of'the policies referred to a Cadillac sedan upon which plaintiff paid a premium of $55. Two of the policies correctly identified Cadillac sedans owned by the plaintiff; the other referred to a sedan numbéred V-57-132 while in fact the third sedan owned by the plaintiff was numbered 59-U-687. That car was involved in an accident, and the defendant insurer disclaimed coverage. The Supreme Court of Louisiana, with very little discussion or apparent difficulty, concluded (p. 600) that it was “ clear * * * that it was the intention of both plain *1002 tiff and defendant to insure plaintiff’s entire fleet of cars.” The court then continued: ‘ ‘ The numbers of two of the sedans are admittedly correct. That neither plaintiff nor defendant intended to insure Cadillac sedan V-57-132 is made patent by the fact that, although this car had once been insured with the defendant, it had been completely dismantled and demolished and went out of existence in 1926. It is evident therefore in the year 1927, when these policies issued, that this number was inserted in the policy through some error of the plaintiff or the defendant, or through the error of both.’ ’ (Ibid.)
Similarly, in Commercial Cas. Ins. Co. v. Skinner (190 Miss. 533 [1941]) the policy in dispute ‘ ‘ covered three buses and described them by names and kinds of vehicles, motor numbers, years built and seating capacity.” The insurer claimed it was released from liability because the number of the motor in the bus involved in the accident was different from the number in the policy. The Supreme Court of Mississippi, in ruling that the insurer had to pay, stated in part (p. 545):
‘ ‘ The bus in question was a 19-passenger Chevrolet bus and was properly described except as to number of the motor. In October the previous year the old motor was replaced with a reconditioned motor. Appellant carried the insurance the previous year, the policy containing the number of the old motor. [The insured] failed to notify the company of the chatige of motors. The company took the descriptions of the buses from the old policy. [The insured] did not give them the numbers for this policy.
“ These were all the buses,owned or operated by [the insured]. slfc •A" Vr
‘ ‘ The motor number was only a part of the description. The motor number might be entirely disregarded and the remainder of the description was sufficient to identify the bus. * * *
“ The risk to the company was not increased by this change. The new motor naturally lessened the insurance risk.” (Id. at p. 546.)
INA’s reliance on such cases as Salomon v. North British & Mercantile Ins. Co. (215 N. Y. 214 [1915]); Porter v. Commercial Cas. Ins. Co. (292 N. Y. 176 [1944]), and Eastern Air Lines v. Trans Caribbean Airways (supra) is misplaced. In the Salomon case, the Court of Appeals denied reformation as to the beneficiary named in an insurance policy on the ground that the plaintiff did not prove that it was “ the intention of the defendant as well as of himself to have the policy read and stipulate as he seeks to have it.” (215 N. Y. at p. 219.) In the Porter and Eastern Air Lines cases, the courts denied reforma *1003 tion because no mutual mistake was established. In the present case, in contrast, the court is satisfied that it was the intention of both the defendant insurer and the plaintiff insured to cover the vehicles then actually owned and operated by the insured and that the policy reflects their mutual mistake as to the identification of those vehicles. Accordingly, plaintiff Dawn Frosted is entitled to the reformation of the policy it seeks, and it and the intervenor plaintiffs are entitled to judgment declaring that defendant INA is obligated under the policy as reformed to defend all actions and claims brought against Dawn Frosted as a result of the accident which occurred on June 19,1965. INA’s counterclaim and cross claims are dismissed.