YEIICHI MIYASHIRO *v.* JULIA YAP, DEFENDANT; MAKEE SUGAR COMPANY, A HAWAIIAN CORPORATION, GARNISHEE.

No. 1460.

EXCEPTIONS FROM CIRCUIT COURT FIFTH CIRCUIT.
HON. W. C. ACHI, JR., JUDGE.

ARGUED JUNE 21, 1923.                    DECIDED JULY 30, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

SET-OFF—*amendment of answer.*

At the beginning of the trial counsel for defendant moved for leave to amend her answer, the desired amendment being vague

Opinion of the Court.

and unintelligible. *Held,* that if the intention of the proposed amendment was to plead a claim of set-off such claim should have been specially pleaded and the refusal of the trial court to allow the amendment constituted no error.

GARNISHMENT—*contingent debt.*

Upon the return and disclosure of the garnishee, a sugar corporation, it appeared that, pursuant to an existing agreement between the garnishee and defendant, the garnishee had made cash advances to defendant and defendant had delivered cane to the garnishee, the price which defendant was to receive for such cane being dependent upon the average price of sugar for the current year, which price would not be ascertainable until several months later at which time a final settlement of the accounts between the parties would be made, and it being uncertain whether at the stipulated time for such settlement the garnishee would be indebted to defendant or defendant indebted to the garnishee, *held,* that it was error on the part of the trial court to hold the garnishee liable and to deny its prayer that it be discharged.

OPINION OF THE COURT BY LINDSAY, J.

Defendant was a homesteader at Kapaa on the island of Kauai, the area of her homestead being 33.31 acres. On September 18, 1918, plaintiff and defendant entered into an agreement in writing which provided that the plaintiff should raise three successive crops of sugar cane upon the homestead of defendant, and should cultivate and harvest the same, for that purpose furnishing all necessary tools and implements, the cane thus raised to be delivered to the mill of Makee Sugar Company, an Hawaiian corporation, and, upon a settlement with that company the gross proceeds to be divided between plaintiff and defendant as specified in the agreement. At the time of the execution of the agreement defendant had already plowed and harrowed 20 acres of her land and it was stipulated in the agreement that plaintiff would pay defendant "all moneys expended by the owner (defendant) at or prior to this date, for the plowing and harrowing of a portion of the above land, a total of 20 acres, with interest thereon

from this date until the same is fully paid and discharged at the rate of 8% per annum."

After the harvesting of the first crop and a settlement with the milling company, which paid the proceeds of the crop to defendant, the plaintiff claimed that he was entitled to receive from defendant as his share the sum of $7512.01. Defendant paid to plaintiff $6310.40, leaving, according to plaintiff's claim, a balance due him of $1201.61, which sum defendant refused to pay to plaintiff, whereupon he brought an action of assumpsit against her in the fifth circuit. The answer of defendant to the complaint consists of a general denial. The Makee Sugar Company, who was named in the declaration as garnishee, filed a return and disclosure showing the existence of a contract between it and defendant and an account in its books in the name of defendant and, contending that it was not liable as garnishee, prayed that it be discharged. The case was tried before the circuit court without a jury, and the court filed its written decision finding plaintiff entitled to recover of defendant $1111.15, and also finding that the garnishee was liable and denying its prayer that it be discharged. Both the defendant and the garnishee have brought the case here on exceptions.

The first exception of defendant lies to the refusal of the trial court to allow defendant to amend her answer.

At the beginning of the trial, counsel for defendant orally moved for leave to amend her answer. It is difficult from the transcript to understand in what respect counsel desired to amend. When asked by the court to make his motion to amend definite, counsel said: "the amendment is that the plaintiff owes to the defendant the sum of $598.00 for the amount of the money expended by the defendant before the date of this contract and interest thereon, for money advanced on May 11, 1920 and any interest thereon, and for services rendered by the defendant

to plaintiff during the term of the contract, and for all money paid by the plaintiff to the defendant on account of the same contract; and also for the amount paid for building the fence through the action of the defendant." Counsel for plaintiff objected to the amendment asked for as coming too late, and on the ground that a set-off should be pleaded, and the objection was sustained.

The proposed amendment is vague and unintelligible. If it was intended as a claim of set-off it should have been specially pleaded. *Lopez* v. *McChesney,* 10 Haw. 225; *Boyd* v. *Kaikainahaole,* 10 Haw. 456. A claim of set-off "is an independent claim which might be made the subject of a separate action or of a set-off, as defendant chooses, but if he chooses the latter course he must plead the claim very much as he would if he were to pursue the former course." *Magoon* v. *Marks,* 11 Haw. 764. Under the circumstances, therefore, the trial court committed no error in refusing to allow the suggested amendment. Moreover, as shown by the transcript, and apparently on the theory that the items of credit claimed by defendant might constitute a defense to plaintiff's claim, the trial court later allowed evidence to be received as to all the items mentioned in the so-called suggested amendment, and the refusal to allow such amendment did not in anywise prejudice plaintiff.

Under the only other exception of defendant, it is contended that, from the state of the evidence, the trial court erred in deciding and entering judgment for the whole amount claimed by plaintiff and in not allowing certain credits to defendant, which credits, had they been allowed, would have more than counterbalanced the claim of plaintiff.

As already stated, under the agreement, plaintiff agreed that he would pay defendant all moneys expended by her at or prior to the date of the agreement, for the

plowing and harrowing of 20 acres of the homestead. The cost of the plowing of the 20 acres, according to defendant's theory, was $1000, which amount should have been deducted by the trial court from the amount allowed to plaintiff. The manner in which defendant fixed the particular sum of $1000 as the cost of plowing was thus: from the evidence of E. K. C. Yap, the defendant's husband, it appeared that, prior to the date of the agreement, it was difficult to procure labor and implements for plowing. Yap, therefore, in company with three other persons, negotiated with the Honolulu Iron Works for the purchase of a tractor, toward the purchase price of which Yap contributed $1000. The 20 acres were then plowed with this tractor after which the tractor was taken back by the Honolulu Iron Works because of some failure on the part of the purchasers to fulfill the conditions of the contract of sale. Defendant testified that she had paid to her husband the $1000 expended by him for the tractor, and her contention is that the amount thus paid constituted the cost of plowing the land, and that plaintiff should therefore pay her this sum, the ingenious argument of defendant in this respect being that she needed to have the plowing done, she bought a tractor which she no longer owns, hence the cost of the plowing was the sum paid for the tractor. To state this proposition is to show its absurdity, and the trial court properly refused to allow defendant $1000 as the cost of plowing. On behalf of the defendant, other than the attempt to fix the cost of the tractor as the cost of the plowing, there was no sufficient showing as to what the cost of plowing actually had been. Two witnesses testified that they had plowed and harrowed the land with the tractor. They did not remember the exact time expended on these operations but thought that it took about 15 or 16 days, neither did these witnesses definitely know or state how much

fuel was used, the cost of nor who supplied the same. These two witnesses also testified that a man named Lovell had done some work on the place with a mule. Plaintiff testified, and the trial court in its decision found that, at the time the agreement was entered into, defendant stated that the plowing of the 20 acres had cost her $232.40, and on that understanding, Mr. Kaneakua, an attorney, drew up a note for said sum of $232.40, which plaintiff thereupon signed and delivered to defendant. Mr. Kaneakua also at the same time wrote in lead pencil upon the margin of plaintiff's copy of the agreement the figures "$232.40".

One of the temporary co-owners of the tractor testified that the tractor had been used in doing plowing and harrowing for two other homesteaders in that vicinity, for which work the owners had in one case charged $7 per acre and in the other case $10 per acre, but that in each of these cases the work had been done at a loss. From this testimony and from all the evidence in the case the trial court was fully warranted in finding that the cost of the plowing and harrowing was $232.40.

In its decision the trial court found that the note given by plaintiff to defendant for this amount had never been returned to plaintiff.

As already stated, the plaintiff has not sought to evade his obligation to pay for the cost of the plowing and harrowing, but on the contrary, he has acknowledged the same and given his note for the agreed cost of such work. At the time of the settlement between the parties, had defendant presented the note and attempted to deduct the amount thereof from the sum due by her to plaintiff, plaintiff would doubtless, as in duty bound, have acquiesced in such deduction. Defendant did not, however, present the note but, ignoring its existence, sought to charge plaintiff with the sum of $1000 for the plowing and

harrowing, which charge was rightfully repudiated by plaintiff. The note for $232.40, whether still in the hands of defendant or in the hands of an innocent purchaser for value, still constitutes an outstanding obligation on the part of plaintiff, for which upon presentation and demand he is liable, and it is to be presumed that he will meet and discharge such obligation.

Another item which defendant claimed she was warranted in deducting from the amount due to plaintiff was for $100 borrowed by plaintiff from defendant's husband, and for which plaintiff gave defendant's husband a note.

It appears from the testimony of both plaintiff and the husband of defendant that plaintiff did at one time borrow from defendant's husband the sum of $100 giving his note to said husband for that amount. There is, however, no evidence whatever of any connection between this transaction and the contract which is the subject of this controversy, and, as far as appears from the record, the transaction in question was a distinct and independent matter concerning which only plaintiff and defendant's husband were concerned. Had it in anywise appeared that the loan in question constituted an advance made by defendant's husband as agent of his wife, a different aspect to the matter might have arisen, but, in the absence of evidence that such was the case, the trial court committed no error in refusing to permit defendant to deduct this sum from the amount due to plaintiff.

The only other item that counsel for defendant contended should have been allowed her by the trial court was for the sum of $60 alleged to have been expended by defendant for the repair of a fence on the homestead premises. From the evidence the trial court properly refused to allow defendant a credit for this item.

The exceptions of defendant are overruled.

The exceptions of the garnishee lie to the finding by

the trial court that the garnishee was liable and denying the prayer of the garnishee that it be discharged.

It appeared from the answer and disclosure of the garnishee that the defendant and the garnishee had on January 2, 1920, entered into a planting agreement under the terms of which defendant for ten years agreed to sell and the garnishee to purchase all the sugar cane raised upon the homestead of defendant. As to the price to be paid defendant for the cane thus raised the agreement provides:

"That the company shall pay for the sugar cane delivered to it by the homesteader, pursuant to this agreement, a price which shall be based upon the average New York price for 96° Centrifugal sugar for the period from January 1st to December 1st of the crop year during which the said sugar cane is harvested and delivered as determined by the telegraphic advices of the New York price of sugar received by Hawaiian Sugar Planters' Association. The company shall on the 15th day of each month credit the account of the homesteader on its books with an amount equivalent to 60% of the value of the cane delivered during the preceding month *determined for this purpose only* by reference to the average New York price for sugar during such preceding month. The balance payable by the company to the homesteader shall be credited to the homesteader on the 15th day of December of each year when any balance then owing by the company shall be paid to the homesteader. The price or prices to be paid to the homesteader by the company, for the sugar cane so delivered shall be at the rate of One Dollar ($1.00) for each ton of 2,000 net pounds of sound mature clean sugar cane delivered, as aforesaid, for each cent per pound of the said New York average price for such 96° Centrifugal sugar for the period from January 1st to December 1st of the crop year in which said sugar cane is harvested and delivered by the homesteader as aforesaid, and at the same rate for a fraction of a cent; provided, however, that if and when the average New York price for Centrifugal sugar polarizing 96° during any crop

year (January 1st to December 1st) shall be over 4 cents per pound, then in every such case the company will pay to the homesteader for his sugar cane delivered during such crop year a bonus of Twenty-eight per cent (28%) in addition to the aforesaid mentioned price. The price aforesaid is for cane that shall be of such a quality that not over nine (9) tons will be required to make or produce one ton of 2,000 pounds of sugar of the quality usually manufactured by the company; and should the said cane, so to be delivered, be of a quality requiring more or less than nine (9) tons, according to the company's factory calculations based upon weights, measurements, analyses, and recovery (all of which shall be determined by the methods published by the Hawaiian Chemist's Association) to make or produce one ton of such sugar as aforesaid, then the rate or rates to be paid for said cane shall vary proportionately."

On March 15, 1922, when the garnishee was served with process, the garnishee had, pursuant to the terms of the agreement between it and the defendant, made advances to defendant amounting to $2504.31. Defendant had delivered to the garnishee 888.391 tons of cane for which the garnishee, according to the terms of the agreement, had credited defendant on the books of the garnishee with $1966.90, this being equal to 60% of the value of the cane delivered reckoned at the rate of $3.69 per ton. The garnishee had also given defendant credit for $36.00 for a returned insurance premium making a total credit to defendant of $2002.90. This sum, deducted from the advances of $2504.31, left a debit balance against defendant and in favor of the garnishee of $501.41. The balance thus shown, however, was merely tentative, and did not reveal the actual status of the account between the parties, for, as appears by the terms of the agreement, the price that defendant was to receive for her cane was not, nor could not be, ascertained until the ensuing 1st day of December. According to the agreement the price

that defendant was to receive for her cane was not the $3.69 per ton with which she had been arbitrarily credited, but that price was unknown and unascertainable until a later date, depending upon fluctuating market conditions. As expressed in the agreement, the price to be paid for the cane was the average New York price for the period from January 1st to December 1st of each year. For each ton of cane delivered defendant was to receive $1 for each cent per pound of the said New York average price of sugar for the period mentioned. In other words, the price that defendant should receive for her cane would not in any year during the continuance of the contract be known until the 1st day of December. If on that date the average price of sugar for the period had been, for example, 3.69¢ per pound the defendant would have been entitled to receive $3.69 for each ton of cane delivered to the garnishee, and on that date, as shown by the evidence, the garnishee would have been indebted to the defendant. On the other hand, if it should transpire that on December 1st the average price of sugar for the period had been below 3.69¢ per pound, defendant would not be entitled to receive so high a price for her cane but, on the contrary, after the price to which she was entitled had become ascertained, it might well be that, instead of the garnishee's being indebted to defendant, defendant would be indebted to the garnishee. Under the evidence therefore, at the time the garnishee was served with process it was not indebted to defendant nor was it by any means certain that even at a later date the garnishee would be indebted to defendant. At the very most, under the circumstances, at that date all that might be said was that, owing to certain contractual relations existing between the garnishee and the defendant, upon the ensuing 1st day of December the garnishee *might* be indebted to defendant. "A debt which is uncertain and contingent, in

the sense that it may never become due and payable, is not subject to garnishment." 28 C. J., p. 130, Sec. 172.

This precise point has been determined in this jurisdiction in the case of *Souza* v. *Smith,* 11 Haw. 202. In that case the defendant who was driver of the garnishee's street-car had been given $25 by the garnishee for use in making change with passengers. The garnishee owed the driver $12 wages. In holding the garnishee not liable this court on page 203 said: "The garnishee, however, relies, not on set-off, but on a claim that by the terms of the contract between the garnishee and the defendant, the wages were payable only upon the return of the $25, in other words, that whether the garnishee owed the defendant anything depended upon the contingency that the defendant should return the money entrusted to him. It is well established that a debt subject to a contingency, and not due or to become due by the mere lapse of time is not subject to garnishment. See *Fellows* v. *Smith,* 131 Mass. 363."

Under the evidence, therefore, we are of the opinion that the trial court erred in holding the garnishee liable. The exceptions of the garnishee are sustained and the cause remanded to the circuit court with instructions to discharge the garnishee.

*L. A. Dickey* (also on the briefs) for plaintiff.

*W. C. Achi* (also on the brief) for defendant.

*P. L. Rice* (also on the briefs) for garnishee.