## PEOPLE OF PORTO RICO v. ZAYAS.

### No. 2635.

Circuit Court of Appeals, First Circuit.

Feb. 25, 1932.

Fred W. Llewellyn, of Washington, D. C. (James R. Beverley, Atty. Gen., and William Cattron Rigby and Blanton Winship, both of Washington, D. C., on the brief), for the People of Porto Rico.

Before BINGHAM and WILSON, Circuit Judges, and MORTON, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from the judgment of the Supreme Court of Porto Rico of December 19, 1930, reversing a judgment of the insular district court of Ponce and discharging the defendant.

The prosecution was begun by a complaint in the municipal court of Juana Diaz, charging the defendant with the violation of the National Prohibition Act (27 USCA). The caption of the complaint was:

"Municipal Court of Juana Diaz, Porto Rico.

"The People of Porto Rico v. Joaquin Zayas, a resident of Caonilla, Juana Diaz, P. R."

In the municipal court the defendant was convicted and appealed to the district court of Ponce. On a trial de novo in that court, he was again convicted and sentenced, from which judgment he appealed to the Supreme Court of Porto Rico. In the Supreme Court the judgment of the district court of Ponce was reversed and the defendant discharged on the sole ground that the complaint was defective in that the party plaintiff was the people of Porto Rico—that it should have been the United States of America—the reason advanced for the holding being that the National Prohibition Act was a federal statute of general application and that a criminal action under it in the insular courts must be prosecuted in the name of the United States. It is from this judgment that the present appeal is prosecuted.

The errors assigned are that the Supreme Court erred: (1) In holding that a complaint for a violation of the National Prohibition Act in the insular courts of Porto Rico should be brought in the name of the United States of America and not in the name of the people of Porto Rico; and (2) in construing the words of section 10 of the Organic Act of Porto Rico (Act of March 2, 1917, 39 Stat. 954 [48 USCA § 874]), "and all penal or criminal prosecutions in the local courts shall be conducted in the name and by the authority of 'The People of Porto Rico,'" to include only prosecutions for violations of local laws, not those of federal laws.

These assignments of error really present but one question: Whether in criminal prosecutions in the local or insular courts of Porto Rico for violations of the National Prohibition Act, the people of Porto Rico is the proper party plaintiff.

The National Prohibition Act of October 28, 1919, when enacted, contained no provi-

sion expressly making it applicable to Porto Rico or conferring jurisdiction on the local insular courts to try offenses for its violation, and whether it was extended to Porto Rico by force of section 9 of the Organic Act of March 2, 1917 (39 Stat. 954 [48 USCA § 734]), is unimportant, for, on November 23, 1921, by an act supplemental to the National Prohibition Act it was made applicable there (42 Stat. 223). Section 3 of that act (27 US CA § 2) provides:

"That this Act and the National Prohibition Act shall apply not only to the United States but to all territory subject to its jurisdiction, including the Territory of Hawaii and the Virgin Islands; and jurisdiction is conferred on the courts of the Territory of Hawaii and the Virgin Islands to enforce this Act and the National Prohibition Act in such Territory and Islands."

While this amendatory act made the National Prohibition Act applicable to Porto Rico, it did not expressly confer jurisdiction over offenses against the National Prohibition Act either upon the United States District Court for Porto Rico or its local insular courts. But this court, in Ramos v. United States, 12 F.(2d) 761, 762, held:

"The National Prohibition Act being a federal law and in force in Porto Rico, the federal District Court of Porto Rico has jurisdiction of offenses arising out of its violation there by virtue of section 41 of the Act of March 2, 1917 (39 Stat. 965 [48 USCA § 863]), defining its jurisdiction as follows:

" 'Such District Court shall have jurisdiction of all cases cognizable in the District Courts of the United States, and shall proceed in the same manner.' "

Although the Act of November 23, 1921, did not confer jurisdiction on the local insular courts of Porto Rico of offenses against the National Prohibition Act, such jurisdiction was conferred by an act approved September 21, 1922 (42 Stat. 993 [48 USCA § 862]), giving those courts concurrent jurisdiction with the United States District Court in such matters. That act provides:

"That there be, and is hereby, conferred upon the Territorial magistrates and courts of Porto Rico jurisdiction concurrent with the commissioners and courts of the United States for the said Territory of all offenses under, the Act of October 28, 1919, known as the National Prohibition Act, and all acts amendatory thereof and supplemental thereto, *the jurisdiction* of said Territorial magistrates and courts over 'said offenses to be the *same* which they now have over other

*criminal offenses* within their jurisdiction." (Italics supplied.)

It is conceded by the Supreme Court of Porto Rico in its opinion in this case, and it reasonably must be, that this act conferred jurisdiction on the local insular courts over offenses for violation of the National Prohibition Act. It is also true that while that act states that the jurisdiction of the local insular courts over said offenses shall "be the same which they now have over other criminal offenses within their jurisdiction," it does not expressly declare that the procedure in such courts in the prosecution of such offenses "shall be the same" which now prevail as to other criminal offenses within their jurisdiction, and it was not necessary that it should, for section 10 of the Organic Act of March 2, 1917, expressly provided that "all penal or criminal prosecutions in the local courts shall be conducted in the name and by the authority of 'The People of Porto Rico,' " the same as section 41 of that act provided how prosecutions in the federal district court should be proceeded with, as above pointed out.

Section 10 of the Organic Act of March 2, 1917 (48 USCA § 874), provides:

"That all judicial process shall run in the name of 'United States of America, ss, the President of the United States,' and all penal or criminal prosecutions in the local courts shall be conducted *in the name* and *by the authority of* 'The People of Porto Rico.' * * * * " (Italics supplied.)

The offenses under the National Prohibition Act, of which jurisdiction is conferred upon the local insular courts by the Act of September 21, 1922, are criminal prosecutions which are authorized to be had in the local courts, and if the plain meaning of the language of section 10 is to be followed, then such prosecutions "shall be conducted in the name and by the authority of 'The People of Porto Rico.' "

It is difficult to reconcile the language of section 10 with the decision of the Supreme Court. In fact, its explicit language does not sanction any such reconciliation, and if support is to be had for the decision, it must be sought elsewhere. The mere fact that the National Prohibition Act is a federal statute is not a sufficient reason, the local insular courts being given jurisdiction of prosecutions for its violation, for holding that such prosecutions shall be in the name of the United States, when section 10 expressly provides that "all penal or criminal prosecution in the local courts shall be conducted **in**

the name and by the authority of 'The People of Porto Rico.'" As it was within the power of Congress to confer jurisdiction on the local insular courts over offenses under the National Prohibition Act, it was equally within its power to say that, in the, prosecution of such offenses in those courts, they should proceed in the name and by the authority of the people of Porto Rico. There can be no doubt that Congress, when it enacted the provisions above quoted from the Act of September 21, 1922, knew of the provisions of section 10 of the Organic Act of 1917, and intended that all criminal prosecutions in the local courts for offenses against the National Prohibition Act should be conducted as pointed out in section 10, the same as it knew, when it enacted section 3 of the Act of November 23, 1921, that section 41 of the Organic Act (48 USCA § 863) provided the manner in which prosecutions of the National Prohibition Act in the United States District Court for Porto Rico should be conducted. Ramos v. United States, supra, 12 F.(2d) 761, at page 763. It is a far cry to say that Congress did not intend what it had explicitly provided for in section 10, but intended that prosecutions should be in the name of the United States. Such a construction is entirely uncalled for and equally unwarranted.

This question first came before the Supreme Court of Porto Rico in 1924, in the case of People v. Rodriguez, 33 Porto Rico, 379, and the court, as then constituted, on June 17 of that year, on a like state of facts, held that the prosecution was properly instituted in the name of the people of Porto Rico. In February, 1925, the same question was again before it (People v. Baragano, 33 Porto Rico, 949) and it reaffirmed its decision in the previous case of People v. Rodriguez. And the rule thus established continued to be the governing rule for six and a half years and down to December, 1930, when, the membership of the court having changed, the judgment appealed from was entered reversing its prior decisions.

The rule thus established and maintained in Porto Rico for six and a half years is the rule maintained in the territory of Hawaii. As to that territory the National Prohibition Act was not only made applicable, but jurisdiction was conferred on the courts of the territory by section 3 of the Act of November 23, 1921; and section 11 of the Organic Act of that territory, of April 30, 1900 (31 Stat. 141, 144 [48 USCA § 505]), provides:

"Sec. 11. That the style of all process in the Territorial courts shall hereafter run in the name of 'The Territory of Hawaii,' and all prosecutions shall be carried on in the name and by the authority of the Territory of Hawaii."

The language of section 11 of the Organic Act of Hawaii is identical with that of section 10 of the Organic Act of Porto Rico, with the single exception that in Porto Rico "judicial process" is to run in the name of the United States of America, while in Hawaii it is to run in the name of the territory of Hawaii; but in both all criminal prosecutions are to be conducted "in the name and by the authority of the Territory of Hawaii" or "of 'The People of Porto Rico,'" depending upon the jurisdiction in which the prosecution is begun.

The Supreme Court of Hawaii, in the case of In re Abreu, 27 Hawaii, 237, 240, decided June 29, 1923, in discussing this question, said:

"The Organic Act, in section 11, provides that 'the style of all process in the Territorial courts shall hereafter run in the name of "The Territory of Hawaii," and all prosecutions shall be carried on in the name and by the authority of the Territory of Hawaii.' In conferring jurisdiction over violations of the Prohibition Act on 'the courts of the Territory of Hawaii,' Congress must clearly have intended that that jurisdiction should be exercised by the appropriate courts of the Territory in the usual manner in which similar jurisdiction is exercised by them and with the machinery at their command. No new machinery for the purpose was created by the act of Congress. The command of section 11 of the Organic Act as to the title of process is to be observed irrespective of who may be the plaintiff in any particular case. In all cases in which process is lawfully issued by the courts of the Territory, that process shall run in the name of The Territory of Hawaii. The provision is sufficiently broad to include cases of violation of a Federal statute brought within the jurisdiction of our local courts by express enactment of Congress."

In that case the contention was that the indictment did not state a violation of any law of the territory of Hawaii, did not set forth any crime against the territory of Hawaii, but a crime against the laws of the United States; and that the United States of America should have been the plaintiff in the case instead of the territory of Hawaii. But the court held otherwise.

In Territory v. Kitahara, 27 Hawaii, 397, decided August 28, 1923, the defendant had been indicted by the grand jury of one of the circuit courts of Hawaii (corresponding to the insular district courts of Porto Rico) for an alleged violation of the National Prohibition Act, and the contention was that the charge in the indictment did not set forth any crime against the laws of the territory of Hawaii and the Second Circuit Court had no jurisdiction .of the case because the indictment was found, not by a grand jury drawn by the United States marshal, but by a grand jury drawn and impaneled in the Second Circuit. But the court, in answering this objection, quoted from its previous decision, in which it held that:

"In conferring jurisdiction over violations of the Prohibition Act on 'the courts of the Territory of Hawaii,' Congress must clearly have intended that that jurisdiction should be exercised by the appropriate courts of the Territory in the usual manner in which similar jurisdiction is exercised by them and with the machinery at their command. No new machinery for the purpose was created by the Act of Congress."

See, also, to the same effect, Territory v. Higashiguchi, 27 Hawaii, 399.

On December 15, 1922, the Judge Advocate General of the Army, representing that branch of the government in charge of Porto Rican matters, on having the question here involved brought to his attention, in his official opinion addressed to the Chief, Bureau of Insular Affairs, War Department (in which the Attorney General of the United States, as shown by a letter from his Assistant Attorney General of December 20, 1922, addressed to the War Department,· concurred), reached the same conclusion as we here reach and as did the Supreme Court of Porto Rico in its decisions in 1924 and 1925.

In 1921 Judge Hanan of the District Court of the Canal Zone, in United States v. Williams, 3 Canal Zone, 297, a federal liquor prosecution in the name of the United States, held that the United States was the proper party plaintiff. But in 1926 District Judge Martin, in Government v. Livengood, 3 Canal Zone, 542, overruled the decision of Judge Hanan on the ground that section 5 of the Code of Criminal Procedure, originally adopted by the Isthmian Canal Commission and continued in force by section 2 of the Organic Act of August 24, 1912 (37 Stat. 561 [48 USCA § 1309]), required all criminal actions in the local courts to be prosecuted in the name of the Canal Zone. This decision of Judge Martin was affirmed by Judge Lenihan in the case of Canal Zone v. Imperiale, C. Z., decided August 30, 1930. The latter case was an information brought in the name of the government of the Canal Zone for a violation of the National Prohibition Act. There was then no legal entity such as the government of the Canal Zone. The sovereign power was the United States of America, and all laws in force there, whether they were laws exclusively applicable to the Canal Zone, or made applicable to the Canal Zone and to other places under the jurisdiction of the United States, were laws of the United States and not laws of the Canal Zone. But, inasmuch as Congress had expressly provided, as above pointed out, that in the Canal Zone criminal prosecutions in the local courts should be in the name of the government of the Canal Zone, it was held that informations for the violation of the National Prohibition Act and its amendments in the Canal Zone must be brought in the name of the government of the Canal Zone. This case goes much further than it is necessary for us to go in the one we are considering. See also Fullerton v. Government of Canal Zone, 8 F.(2d) 968, 971 (C. C. A. 5th Cir.).

The conclusion we here reach is sustained in principle by the case of Summers v. United States, 231 U. S. 92, 34 S. Ct. 38, 40, 58 L. Ed. 137. In that case a criminal prosecution had been brought against Summers in Alaska for a violation of the National Banking Act, which had been made applicable to that territory. The indictment contained fifty-six counts. Section 43 of the Criminal Code of Alaska (30 Stat. 1253, 1290) provided in part "that the indictment must charge but one crime." There the government contended that, because the offense charged was not defined by the Criminal Code of Alaska, section 43 of the Code had no application, and that the indictment was good under section 1024 of the Revised Statutes of the United States (18 USCA § 557), authorizing joinder of counts in federal indictments. The trial court sustained the contention of the government. The Circuit Court of Appeals for the Ninth Circuit affirmed the judgment (202 F. 457), but the Supreme Court of the United States reversed the Circuit Court of Appeals and held that the procedure provided for in section 43 . of the Criminal Code of Alaska was applicable. In the course of its opinion it said:

"The trial court expressed its recognition of the difference between a district and cir-

cuit court of the United States and a territorial court, such as the district court of Alaska was expressed to be, but was of opinion that when the latter court exercises jurisdiction to enforce the laws of the United States, 'not only the substantive law, but the machinery, the procedure which enables the court to enforce the substantive law,' applied.. The circuit court of appeals, in a circumstantial opinion, reached the same general result and considered that the Alaskan Code, by its title and some of its provisions, explicitly specialized the crimes relating to Alaska and the procedure applicable to them. The title of the act is, it was said, 'An Act to Define and Punish Crimes in the District of Alaska, and to Provide a Code of Criminal Procedure for Said District;' the enacting clause is, 'That the penal and criminal laws of the United States of America, and the procedure thereunder relating to the District of Alaska, shall be as follows:' and § 2, chapter 1, title 1, provides: 'That the crimes and offenses defined in this act, committed within the District of Alaska, shall be punished as herein provided.' It was hence concluded that as the offense charged in the indictment was not one mentioned in the Alaskan Code, it was not one to be governed by the local procedure, but was left under the procedure prescribed in section 1024 of the Revised Statutes. The conclusion was fortified by a consideration of the genesis of the respective provisions. The result of the conclusion will be the existence of a dual procedure in the prosecution of different crimes committed within the same territorial jurisdiction. The result may have examples but it is certainly undesirable, and the systematic character of the Alaskan Code indicates a contrary intention."

The judgment of the Supreme Court of Porto Rico is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.