MATTIE A. ELLIOTT, ADMINISTRATRIX, APPELLANT, V. ÆTNA LIFE INSURANCE COMPANY, APPELLEE.

FILED FEBRUARY 21, 1917.  No. 18822.

Garnishment: LIABILITY OF INDEMNITOR. Where, according to the terms of an indemnity policy, an insurance company has taken sole and exclusive charge of the defense of an action against the insured for damages for the death of the latter's employee and a judgment has been rendered against the insured, the liability of the insurance company is subject to garnishment where the insured is insolvent, notwithstanding a provision that "no action shall lie against the company to recover for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after actual trial of the issue."

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE.  *Reversed.*

*W. C. Lambert* and *S. L. Winters,* for appellant.

*Gurley & Fitch,* contra.

MORRISSEY, C. J.

Plaintiff recovered a judgment against the General Construction Company for the death of her son while in its employ, and in garnishment proceedings summoned the Ætna Life Insurance Company, which had insured the General Construction Company against loss resulting

from claims for damages on account of injuries or death suffered by any employee. The garnishee denied liability to the judgment debtor, on the ground that the latter was insolvent and had not paid the judgment, the policy providing: "No action shall lie against the company to recover for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after actual trial of the issue."

The garnishee was discharged. This action was brought to recover from the Ætna Life Insurance Company for an unsatisfactory answer in the garnishment proceedings. From an order sustaining defendant's demurrer and dismissing the action, plaintiff has appealed.

In addition to the provision quoted, the policy also provided: "Upon the occurrence of an accident the assured shall give immediate written notice thereof with the fullest information obtainable to the home office of the company at Hartford, Connecticut, or its duly authorized agent. If a claim is made on account of such accident the assured shall give like notice thereof with full particulars. The assured shall at all times render to the company all co-operation and assistance in his power.

"If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company's home office every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on behalf of the assured, unless the company shall elect to settle the same or to pay assured the indemnity as provided for in condition A hereof.

"The assured, whenever requested by the company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses, and in pros-

ecuting appeals, but the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at his own cost, without the written consent of the company previously given, except that the assured may provide at the company's expense such immediate surgical relief as is imperative at the time of the accident."

The petition alleges that the insured complied with the provisions of the contract and surrendered control of the action, that defendant herein conducted all negotiations for settlement, took sole charge of the action against the General Construction Company, and from a judgment in plaintiff's favor took an appeal to the supreme court, where the judgment was affirmed. *Elliott v. General Construction Co.*, 93 Neb. 453. It may also be inferred from the petition that the insured was insolvent when the action against it was commenced.

The question presented seems to be: Where, according to the terms of an indemnity policy, an insurance company has taken sole charge of the defense of an action against the insured for damages for the death of the latter's employee and a judgment has been rendered against the insured, is the liability of the insurance company subject to garnishment where the insured is insolvent, where the policy provides that "no action shall lie against the company to recover for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after actual trial of the issue?"

Defendant contends that the policy is an indemnity contract, and that under the terms of the provision just quoted it is in no case liable to the insured until the latter has actually paid the judgment. In the interpretation of a contract an admissible and a reasonable construction which will not render it invalid should be adopted. The general purpose of the contract should also be considered. The general object of the indemnity

was that losses arising from injuries to employees should not fall upon the employer, but upon the insurer, who by the collection of premiums creates a fund with which to pay such losses. To cheapen the cost of insurance the insurer agreed to defend at its own cost all actions which it should be unable to compromise. The employer surrendered control of the litigation, and the insurer, through its attorneys, resisted the claim of plaintiff, was unsuccessful, and appealed to the supreme court, where the judgment was affirmed. *Elliott v. General Construction Co.*, 93 Neb. 453. For every purpose except that of paying the judgment the insurer has been the real litigant. After it has exhausted all legal measures in attempting to defeat plaintiff's claim, it attempts to deprive her of the fruits of the litigation by relying upon the failure of the insolvent employer, the judgment debtor, to pay the judgment, as required by the following provision of the contract: "No action shall lie against the company to recover for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after actual trial of the issue."

This is a proper provision to protect the insurer from claims of the employer before the latter has paid the judgment, since the purpose of the contract was to reimburse him, and not to provide him with funds which he might or might not use to pay a judgment recovered by an employee. This protection is not denied the insurer when through garnishment proceedings after judgment it is compelled to pay a judgment rendered against an insolvent employer. Its obligation under the contract is discharged as fully as if it had paid the employer after he had paid the judgment. Any other construction can serve no purpose except to defeat the collection of plaintiff's judgment. Where the insurer has been the actual litigant it will not be permitted to defeat the collection of the judgment

by insisting upon such a construction. The conclusion here reached has been justified by the supreme court of Minnesota in the following language:

"Upon the record did it appear that the company, the garnishee, was indebted to the defendant when the disclosure was had? It may be conceded that the company intended so to frame the policy that not every avenue of escape from payment in case of a loss should be closed. The main purpose of its business is to obtain and retain the premiums. The object of the assured is to get protection. The object and purpose of the contracting parties is not to be lost sight of in construing a contract, nor is the rule that in case of ambiguity it must be resolved against the one who prepared the instrument."

"If suit is brought on a claim intended to be covered by this policy, the company, after notice, agreed to defend; but, not only that, it reserved to itself the exclusive right to settle or carry on the litigation, excluding the assured from any interference therewith. On these provisions the company acted, assumed the defense, and has carried on the litigation to the bitter end, even after defendant left this jurisdiction. The assured retained no voice or interest in the litigation. The company substituted its interests and its judgment for that of the assured in the action. By so doing it assumed a relation to this plaintiff, and to every plaintiff where under its policy it steps into a suit, which must be considered in construing the contract. Neither public policy nor legal principles can be invoked against the validity of these provisions, if they mean no more than an undertaking to contest an asserted claim against the assured, for which it is liable when established; but if, under the pretense of an insurance obligation, the company carried on litigation in the name of one who has neither voice nor interest therein, and which does not affect the company itself, because the assured is

unable or unwilling to pay if plaintiff is awarded judgment, it would seem the company becomes an officious intermeddler. Public policy does not permit a litigant to so surrender control of his lawsuit to one who has no interest in the cause of action. A contract between client and attorney, although the attorney has a lien for his fees on the cause of action, is void, if the client is excluded from control of the cause of action. The policy here should be so interpreted, if possible, that its provisions do not run contrary to law, and that result is reached by holding that the undertaking to defend means something more than carrying on litigation in court. * * * We therefore hold that, in a policy such as this, where the company has come into the litigation and assumed exclusive control thereof under its contract, it recognizes a liability, if it fails to defend successfully, to pay the assured the amount of the judgment it so permits to be established, not exceeding the sum stipulated in the policy, and also that, as to the plaintiff, it should be considered that such judgment is a debt due the assured from the company, and not dependent on any contingency. Payment of the judgment, so far as the rights of the company are concerned, in such case, is a mere *pro forma* matter, and not a condition precedent to its liability to defendant under plaintiff's garnishee proceeding." *Patterson v. Adan,* 119 Minn. 308.

It must be conceded that the majority of courts passing upon this question have taken a different view. The cases are reviewed in *Fidelity & Casualty Co. v. Martin,* 163 Ky. 12. The conclusion reached in the present case, however, is in harmony with the general purpose of the contract, promotes justice, and deprives the indemnitor of no legitimate protection.

The judgment of the district court is therefore reversed and the case remanded.

REVERSED.

CORNISH, J., dissenting.

The maxim, "no wrong without a remedy," refers to legal wrongs. In a free state, where men buy, sell, contract, and mingle with each other, inequities arise of which the law takes no cognizance. My brothers of the bench feel sure that the plaintiff, if defeated, would suffer wrong. I think they are mistaken, and, whether mistaken or not, I feel sure that the decision does the defendant a legal wrong.

Stripped of legal verbiage, the question is: Will the courts permit a contract wherein the insurer promises to indemnify the employer against loss from accident to employees on condition that he shall be notified, shall consent to any settlement made, be permitted to defend the lawsuit, if any, and also on condition that it shall be so far an indemnity contract that the insurer shall not be liable until the employer has actually paid the loss sustained, as determined in settlement or in court?

If such a contract will be permitted, then the contract under consideration will be permitted. One can safely challenge opposition to find a term or provision lacking for such a contract. Its history is that it was carefully drawn with a view to the "payment-first" provision and agreed to by the parties to it. Now, when parties have freely contracted, the courts must abide by the terms of the contract, or tell why not; otherwise, the court makes the contract for the parties and becomes a legislative body. A mere inequity as between the parties is not sufficient. Some ambiguity or repugnancy must be shown, or that it is unconscionable, against public policy, or otherwise forbidden by law. Hard cases make bad law.

In the body of the opinion the court reaches its conclusion through an interpretation of the contract, and gives as a reason for its interpretation that to require payment by the employer of the judgment, before liability of the insurer arises, would make the contract

one against public policy. In the syllabus, which is supposed to state the law of the case, the rule is not made to depend upon interpretation at all, but applies to any contract containing the provision quoted in it. Suppose the next contract which comes before us should be one containing a provision like the one quoted in the syllabus, with these words in addition: "Let no one, either the courts or anybody else, construe this contract to mean that in a certain event the insurer is liable before payment of the loss by the employer; it means, as of course we always intended it to mean, that in no event, the parties having lived up to their contract, shall the insurer be liable until the employer has suffered the loss; that is, has paid it." Will the court then, contrary to the opinion, refuse to call the contract void as against public policy? Will it, in accordance with the rule stated in the syllabus, hold that the liability still exists, even though the contract is against public policy? Probably not; for if, in any such case, the quoted provision is against public policy, then the whole contract, being inseparable, fails. The courts will not perforce give a contract the construction that its language will not permit, to prevent its being void as against public policy.

In the opinion, interpreting the contract, it is thought its provisions may "mean no more than an undertaking to contest an asserted claim against the assured, for which it (the insurer) is liable when established." The "undertaking to contest" is squarely and fully provided for in a section preceding the quoted provision. The quoted provision is the only one in the contract which undertakes to tell when the liability for payment arises against the insurer. Read it again. It seems to the writer that it can have but one possible meaning; that is, that the employer must pay the loss before he is entitled to be indemnified.

It is argued, not as a matter of estoppel, but of interpretation, that the quoted provision may have in

mind a case where the insurer has refused to defend, in which case he will not be liable until the employer has paid the judgment. This suggestion does violence to the terms of the contract. The undertaking to defend is absolute. It forgets that the policy throughout is one to indemnify against loss, and not against liability. The insurer has no right of election to defend or not. By its plain terms, the insurer must either settle, defend, or pay. Under such an interpretation, the insurer can defend only on penalty of assuming the entire liability of the suit.

Would a provision making liability contingent on payment by the employer, combined with the provision that the insurer shall have control of the defense, make the contract void as against public policy? Not, I think, unless we are to make new law. As said by one of the early judges, "Public policy is an unruly horse and dangerous to ride." "Judges are more to be trusted as interpreters of the law." Public policy extended might lead us anywhere, just as would the practice, in deciding cases, of not applying the general rules of the law, but following our sense of equity in the individual case.

So far is the provision requiring notice to the insurer and a right to defend from being against public policy, that what is most valuable in that provision for him would be his, if the provision were entirely left out of the contract. He is the real party in interest, the one who should defend, the one who may have to pay the judgment. At common law, one who has to pay the judgment is entitled to notice, has a right to be present and even be given a voice in the trial. The court would protect his interest to see that no unjust judgment was obtained. The insurer's case is not that of an intermeddler, or of a lawyer, buying a lawsuit, stirring up a lawsuit, or preventing settlement. Probably, at common law, without any contract for it, the employer could not hold him to a settlement without his consent. Under

this contract, the employer is as free to settle as if he had never paid his $30 premium.

How can it be said that the insurer has no interest in the lawsuit when the employer is insolvent? That is to say that insolvents have no credit. Ordinarily, or at least in half of the cases, the insolvent will find it easy to get the money to pay the judgment. The argument assumes that the insurer will know of the insolvency.

Much time is spent in discussing the propriety and purpose of the quoted provision requiring payment first. I do not care how hard this provision may appear to be in the present case. In my opinion, its meaning being clear and unambiguous, the particular purpose or reason which the parties had for inserting it is not the business of the court. The fact that, as free contracting parties, they placed it there is sufficient. If reasons are necessary, they are at hand. The insurer wished to make a strictly indemnity contract. He did not care to be subrogated to a loss which the employer was released by his insolvency from paying. The insurance world recognizes the fact that the irresponsible man is a greater risk than the responsible one. In cases like the one in hand the danger of collusion between employer and employee at once arises. Again, the insurer, on grounds of business policy, may prefer to make sure that the money goes to the injured employee. Without the provision, it may go elsewhere. The opinion itself says: "This is a proper provision to protect the insurer" against the misapplication of the fund. But such need for this protection could only arise in case of insolvency. So we have the court, at this point, making the provision a proper one for this purpose, but, later on in the opinion, holding that it never has any use or application except when the insurer has not conducted the defense. If the provision is in for one purpose, it is in for all purposes within its expressed meaning. The court cannot say it shall apply for this purpose, and

justify itself in refusing it for other purposes because, in the individual case, it would work a hardship, contrary to its notions of justice. The laws are adapted to those cases which more frequently occur. It seems to me the opinion exhibits a strained construction of the contract, due to the particular circumstances of the case. If these contracts work a hardship on employees, that is a consideration for the legislature, not the courts of justice.

The contract, on simple view, is clear and easily understood. Argument about it and the refinements of logic, to make it mean something else, are only confusing. Twenty-four courts, besides the trial court, have passed upon this contract. All but three of them have construed it to be an indemnity, not a liability contract. For a review of the cases, see the recent case entitled *Fidelity & Casualty Co. v. Martin,* 163 Ky. 12.

The courts must remember that they are neither law-makers nor contract-makers, and that contracts not prohibited by law are the law between the parties to them. As said by Sir Frederick Pollock, in his article on Contracts, 7 Ency. Brit. p. 35, the enforcement of contracts is among "the most important functions of legal justice." Page 38: "The business of the law, therefore, is to give effect so far as possible to the intention of the parties, and all the rules for interpreting contracts go back to this fundamental principle and are controlled by it. * * * A rule which can take effect against the judicially known will of the parties is not a rule of construction or interpretation, but a positive rule of law." If we deviate from this rule of construction, there will arise general confusion and uncertainty as to what the law is, not conducive to the ends of justice.