CRAIG *v.* GADDIS.

(Division B. Nov. 19, 1934. Suggestion of Error Overruled Dec. 17, 1934.)

[157 So. 684. No. 31373.]

Eastland, Eastland & Ormond, and O. B. Triplett, Jr., all of Forest, for appellant.

**Nichols & Huff**, of Forest, for appellees.

382

Argued orally by **O. B. Triplett, Jr.**, for appellant, and by **J. Knox Huff**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

.This is a foreign attachment in chancery. Appellant filed his bill in the chancery court of Scott county against the Yukon Mill & Grain Company, an Oklahoma corporation doing business at Yukon, in that state, and appellee, a merchant in Scott county, Mississippi, by which he sought to establish a claim for damages against the mill company for an alleged tort, and to subject to the payment of his claim an indebtedness which he averred appellee was due the mill company for the purchase price of a carload of flour. The cause was tried on the pleadings and resulted in a decree in favor of appellee. From that decree appellant prosecutes this appeal.

In July, 1933, appellee ordered, in writing, a carload of flour from the Yukon Mill & Grain Company. The order was accepted and the flour shipped on the 7th of that month. The mill company asked for and received from the initial railroad a shipper's order notify bill of lading. It thereupon drew a draft on appellee for the purchase price of the flour with the bill of lading attached and placed the same in a Yukon bank for collection. In the process of collection, the draft and bill reached the bank of Morton, in this state. On July 11, 1933, the flour had reached Morton, but was still in possession of the delivering railroad. On that day the bill in this case was filed, and process was served on appellee. On the 17th of the same month the bank of Morton presented to appellee for payment the draft with the shipper's order bill

attached. Appellee thereupon paid the draft, took up the bill, presented it to the railroad, and received the flour.

The question is whether or not, under those facts, there was an indebtedness existing between appellee and the mill company, in the meaning of section 173, Code of 1930, which is in this language: "The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising ex delicto against any nonresident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such nonresident, absent or absconding debtor. The court shall give a decree in personam against such nonresident, absent or absconding debtor if summons has been personsonally served upon him, or if he has entered an appearance."

Before disposing of the question, we think it well to refer to the procedure adopted in this case. It is true that no question is raised by either side as to its propriety; nevertheless, we think the matter is of sufficient importance to the bench and bar for the court to raise the question. The cause was litigated all the way through on the assumption that the attachment and garnishment statutes applied to attachments in chancery. This is not true; they have no application. Although jurisdiction is conferred by statute, the pleading, practice, and procedure are that of the chancery court, except where otherwise provided in sections 173 to 178, inclusive, of the Code, being the sections covering attachments in chancery. Inman v. Travelers' Ins. Co., 153 Miss. 405, 121 So. 107. It is true that when that case was decided the statute providing for attachments in chancery, and the pro-

cedure therein, constituted a part of the chancery court chapter in the Code of 1906 (section 536 et seq.), as it had in all previous Codes since its adoption. For the first time, it appears in the Code of 1930, in the chapter on attachments (section 173 et seq.). The fact, however, that the Code commissioners, who arranged the Code of 1930, took it out of the chancery court chapter and placed it in that chapter neither added to nor took anything away from it. In many of the opinions of this court where this statute was under consideration the resident defendant is referred to as garnishee for want of a better name. We think it appropriate, but such references were made without any consideration of the statutes on attachments and garnishments.

Now going to the question involved and litigated, was there ever any indebtedness growing out of this transaction due by appellee to the mill company which could be subjected by appellant to the payment of his claim against the mill company? We think that question must be answered in the negative. It is true that appellee had a binding contract under the law with the mill company to accept and pay the agreed purchase price for the carload of flour, but payment and delivery of the flour were to be made at the same time. In other words, the mill company was to deliver the flour to appellee at Morton when he paid the draft for the purchase price. The draft had attached to it the muniment of title to the flour—the order bill of lading. The payment of the draft and the passing of the title to the flour took place simultaneously. There was no space of time between the two; therefore the relation of debtor and creditor could not arise. It was a cash transaction.

It is true that, if appellee had breached the contract by refusing to take and pay for the flour, appellant would have had a right to the recovery of damages for the breach, still it would not have been an indebtedness which, under the statute, could have been reached by an

attachment in chancery. It is only an existing indebtedness which can be subjected under the statute; unliquidated damages cannot be reached; such is not an indebtedness. Travelers' Ins. Co. v. Inman, 157 Miss. 810, 126 So., 399, 128 So. 877; Blair & Anderson v. R. Co., 76 Miss. 478, 24 So. 879. In the Blair & Anderson Case the complainants sought to garnish unliquidated damages growing out of a tort, but the same reasoning applies to unliquidated damages growing out of a breach of a contract. Under the statute the basis of the action against the principal defendant may be for unliquidated damages, but the claim sought to be garnished must be liquidated; otherwise two damage suits would be tried in one.

Affirmed.