COMMERCIAL CASUALTY INS. CO. *v.* SKINNER.

(In Banc.  March 24, 1941.)

(1 So. (2d) 225.  No. 34444.)

534

Jackson, Young & Friend, of Jackson, for appellant.

536

**Hall & Hall,** of Columbia, and **G. M. Milloy,** of Prentiss, for appellee.

Argued orally by **Forrest B. Jackson**, for appellant, and by **Lee D. Hall**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

May 6, 1939, Skinner recovered a judgment for $1,500 in the circuit court of Marion County against one Randall for personal injuries sustained in a collision between his automobile and a passenger bus owned and operated by Randall.

That judgment was affirmed on appeal to this court. See Randall v. Skinner, 187 Miss. 602, 192 So. 341.

The judgment was not paid and Skinner had a writ of garnishment issued thereon against appellant as the insurer of Randall as a common carrier.

After extensive pleadings, not necessary here to consider, and upon hearing and proof, the court below instructed the jury peremptorily to find for the plaintiff, which was accordingly done, and judgment was thereupon entered for Skinner against the appellant for the amount of the original judgment, interest, cost, etc. From that judgment this appeal is prosecuted.

Appellant contends that its liability extended only to losses or damage actually sustained by the insured, and, since assured has suffered no loss or damage, the company even defending the original action, there is no liability. The case was tried below and is presented here on that theory. Both counsel admit that if the liability of the Insurance Company is only against loss actually sustained by Randall, the garnishment will not lie, and, conversely, if the obligation of the Insurance Company is more than that and amounts to insurance against liability,

then the garnishment will lie. Both of these propositions are amply sustained by the authorities. The general rule is stated in 4 American Juris. p. 750, paragraph 314, as follows: ''If a policy is treated as a contract of indemnity against liability, as distinguished from indemnity against loss actually sustained, the insurer is subject to garnishment by an injured person who has recovered judgment on a claim which is within the protection of the policy.''

In the case of Employers' Liability Assurance Corporation v. Bodron, 5 Cir., 65 F. (2d) 539, 540, a case originating in Mississippi, Judge Bryan, speaking for the court, announced the rule as follows: ''The policy was not one which provided for indemnity in case of loss. As the assured became liable by reason of the judgment against him, so did the insurer. If the policy be one of indemnity against liability as distinguished from indemnity against loss, the insurer is subject to garnishment by an injured person who has recovered judgment on a claim which is within the protection of the policy. 5 Couch on Insurance 4186; 28 C. J. 166.''

Many other authorities could be, but are not, cited because there appears to be no material disagreement in the cases on these propositions. Randall, as the operator of a public bus, was required to furnish ''public liability or indemnity insurance'' under Section 7124 of the Code of 1930, ''covering injuries and damages accruing to persons or property, arising out of its operations as such transportation company.''

On his behalf appellant, under date January 4, 1938, sent a telegram to the Mississippi Railroad Commission, reading as follows: ''Please Accept This Telegram As Binding Bodily Injury And Property Damage Liability Insurance Coverages Conforming With Requirements Your Commission for J. B. Randall DBA Varnado Bus Line Effective January First. Policy To Be Filed Shortly. Please Wire Confirmation. Commercial Casualty Ins. Co.''

Following this telegram appellant, on February 9, 1938, issued the present policy, which is dated January 1, 1938, for a period of one year, containing these provisions:

"Commercial Casualty Insurance Company—(A Stock Insurance Company Herein Called the Company)—Agreements—does hereby agree to indemnify the Insured, named in the Declarations made a part hereof and herein called the Insured, in consideration of the premium herein provided and of the statements contained in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy, against loss from the liability imposed by law upon the Insured arising from claims against the Insured for damages caused by accident growing out of the ownership, maintenance or use of any of the automobiles enumerated and described in Item 4 of the Declarations only while owned, maintained, used and operated for the purposes stated and subject to the limitations in Items 1 and 5 of said Declarations . . ."

"The Company shall not be liable to pay any loss nor shall any action be brought against the Company until final judgment shall be recovered against the Insured in the court of last resort.

"The insolvency or bankruptcy of the Insured shall not release the Company for any payment for which it would be liable under this policy, and if such insolvency or bankruptcy shall occur and execution on a judgment recovered in a suit against the Insured covered by this policy is returned unsatisfied, the judgment creditor shall have a right of action to recover the amount of such judgment against the Company to the same extent that the Insured would have had to recover against the Company had the Insured paid the said judgment; but in no event shall the liability of the Company exceed the limits expressed in this policy. In no event shall any action be maintained against the Company under this policy unless brought within one year after Right of Action accrues; provided, however, that the minimum time set

by the statutes of the state in which the Insured resides shall govern.

"The Company does not prejudice by this condition any defenses against such action that it may be entitled to make under this policy."

". . . In consideration of the premium stated in the policy to which this endorsement is attached the insurer hereby insures the motor vehicles described in the policy and agrees to pay within the limits of the policy or any endorsement attached thereto any final judgment for personal injuries including death resulting therefrom (suffered by any persons other than the insured or his employees) and/or damages to property (including loss of, or damages to property of passengers, after receipt thereof by the motor transportation company and while carried on the motor vehicle), but excluding the property of the Insured or property (usually designated as 'cargo') loaded for shipment or in transit, caused by the negligent operation of said motor vehicle operated by the insured pursuant to a certificate of public convenience and necessity issued in accordance with said Mississippi Motor Carrier Act of 1926, and further agrees that upon its failure to pay any such final judgment such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment."

". . . No condition, provision, stipulation or limitation, contained in the policy or any other endorsement thereon, nor the violation of any of the same by the insured shall affect in any way the right of any person injured in person or property by the negligence of the insured or relieve the insurer from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and in the amounts set forth in the policy."

The last two provisions appear to have been endorsements to the regular policies to comply with the Mississippi Motor Carrier Act then in force.

A mere reading of the foregoing provisions demonstrates so clearly, we think, that this policy is more than indemnity against actual loss, it is not necessary for us to dwell upon or try to amplify them. 4 Am. Jur. 749-752; Elliott v. Aetna Life Ins. Co., 100 Neb. 833, 161 N. W. 579, L. R. A. 1917C, 1061; Maryland Casualty Co. v. Peppard, 53 Okl. 515, 157 P. 106, L. R. A. 1916E, 597; Travelers' Ins. Co. v. Inman, 157 Miss. 810, 126 So. 399, 128 So. 877; Employers Lia. Assur. Corp. v. Bodron, 5 Cir., 65 F. (2d) 539.

We might add that the very object and purpose of requiring Randall to carry insurance was for the protection of the public and the applicable provisions of the statutes would be written into and become a part of the policy.

Appellant next contends that it is released from liability because the number of the motor in the bus was different from the number in the policy. The policy covered three buses and described them by names and kinds of vehicles, motor numbers, year built and seating capacity. The bus in question was a 19-passenger Chevrolet bus and was properly described except as to number of the motor. In October the previous year the old motor was replaced with a reconditioned motor. Appellant carried the insurance the previous year, the policy containing the number of the old motor. Randall failed to notify the company of the change of motors. The company took the descriptions of the buses from the old policy. Randall did not give them the numbers for this policy.

These were all the buses owned or operated by Randall. It is not disputed that the 19-passenger bus was the one which caused the injury and that this was the bus insured.

The motor number was only a part of the description. The motor number might be entirely disregarded and the remainder of the description was sufficient to identify the bus. Shivers v. Farmers' Mutual Fire Insurance Co., 99 Miss. 744, 55 So. 965.

In Wyman v. Security Insurance Co. of California, 202 Cal. 743, 262 P. 329, 330, the motor had been changed without knowledge of the insurance company, but the company was not relieved of liability, the court saying, "There was no question but that the truck destroyed by the fire was the truck which the defendant insured. The motor number given in the policy of insurance was merely for the purpose of identifying the truck, and as the truck could be and was positively identified without resort to this number, this portion of the description became immaterial." See, also, Tomato Products Co., Inc., v. Manufacturers' Liability Ins. Co., 203 App. Div. 678, 197 N. Y. S. 497; Caldwell v. City of New York Ins. Co. (Mo. App.), 245 S. W. 602; White v. Home Mutual Ins. Ass'n of Iowa, 189 Iowa, 1051, 179 N. W. 315.

Again, under the terms of the policy the insurance company had the right to inspect these buses "whenever it so desired," and it did inspect them regularly.

The risk to the company was not increased by this change. The new motor naturally lessened the insurance risk.

In addition to the foregoing, Randall was required to carry insurance satisfactory to, and which complied with the regulations of, the Railroad Commission, and the company had telegraphed the Commission that its policy would meet the "requirements of your commission." The Commission had on its minutes the requirement that all insurance should carry this endorsement: "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer hereby insures the motor vehicles described in the policy and any motor vehicle substituted therefor, but not additional motor vehicles . . ."

It might also be added that the policy was not sent to Randall but to the Railroad Commission and the policy itself was received only three days before the accident, allowing little time for its examination, if there was any duty to examine it.

The contention is not well taken.

Appellant says it is not liable because of lack of co-operation by Randall. It is very doubtful, even if these were the facts, that the company is relieved of liability to third persons under the terms of this policy, but a careful examination of the record does not disclose any lack of required co-operation by Randall.

Appellant next contends that Randall did not own the bus at the time of the accident. We think the testimony clearly shows he did own it at that time. In addition, the policy covered liability growing out of the "ownership, maintenance or use" of the bus. No one questions the fact that this bus was being used by Randall when the accident happened. This fact was also determined and concluded in the original trial.

Appellant assigns as error the admission in evidence of the telegram to the Commission. The objection is the telegram was superseded by the policy. The telegram was a connecting, fundamental basis of liability of appellant.

We find no error in this record, and the judgment is affirmed.

Affirmed.