215 So.2d 245 (1968)
AMERICAN NATIONAL INSURANCE COMPANY
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 45008.
Supreme Court of Mississippi.
October 28, 1968.
*247 Elizabeth Hulen, Watkins & Eager, Jackson, for appellant.
Kenneth G. Perry, Satterfield, Shell, Williams & Buford, Jackson, for appellee.
ETHRIDGE, Chief Justice:
This is a garnishment proceeding against the underwriter of an employees' fidelity insurance bond. The judgment creditor is American National Insurance Company, garnishor-appellant (hereinafter called American). American's assignee and subrogee is Insurance Company of North America (called INA). The judgment debtor or defendant is Richard C. Rogers and Company-Mortgage Division, a corporation (called Mortgage Division). The garnishee is United States Fidelity & Guaranty Company, appellee (USF&G), which had written an employees' fidelity bond for Mortgage Division, its insured. We hold that American can garnishee USF&G for the proceeds of the fidelity bond issued by it to Mortgage Division, the judgment debtor. Hence the judgment of the Circuit Court for the First Judicial District of Hinds County is reversed, and judgment is rendered here for appellant.
In June 1964, American filed suit against Rogers & Company-Mortgage Division, and its president, Richard C. Rogers, alleging that in 1963 Mortgage Division was an agent of American for the servicing of loans in Mississippi and as such it made collections of monthly installments due on loans to American, and was under the duty to remit such collections to American. It was alleged that Mortgage Division failed to account to plaintiff for such funds collected by it and was indebted to American in the amount of $47,006.44. The declaration had attached to it a sworn account. A default judgment was taken against Mortgage Division and Richard C. Rogers, individually. On September 17, 1964, the Circuit Court for the First Judicial District of Hinds County entered judgment thereon in the amount of $47,006.44 against Mortgage Division and Richard C. Rogers, jointly and severally. The judgment recited that it was
"* * * for failure to account for trust funds as agent of Plaintiff due to and arising out of and on account of loss of said trust funds sustained by the said Richard C. Rogers & Company, Mortgage Division, by virtue of and on account of dishonest and fraudulent misappropriation and defalcation of funds of Richard C. Rogers & Company, Mortgage Division, by its employee, Richard C. Rogers; and the said Richard C. Rogers being indebted to Plaintiff for such dishonest and fraudulent misappropriation of funds * * *"
In December 1964, American filed a suggestion for writ of garnishment on its judgment, charging that appellee, USF&G, was indebted to Mortgage Division. A writ of garnishment was issued, to which USF&G objected, denying the existence of any debt to Mortgage Division.
During the period when the defalcations by Richard C. Rogers occurred (October-December 1963), USF&G had in effect for Mortgage Division, a corporation, a commercial blanket employees' fidelity bond. Under the insuring agreement, USF&G contracted "to indemnify the insured against any loss of money or other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees * * *" of insured.
The case was tried before the circuit judge without a jury. The circuit court found as a fact that American had proved every item of the indebtedness, i.e., the defalcations by Richard C. Rogers, who was the president of Rogers & Company-Mortgage Division. The court further held *248 that Mortgage Division and Richard C. Rogers & Company, a purported separate corporation which had not made a report of organization, were one and the same entity; that in effect Mortgage Division utilized Richard C. Rogers & Company as a trade name in carrying on its business. However, the trial court held there was no privity of contract or any other rule of law by which American could sue USF&G in the name of the latter's insured. The judgment therefore directed that plaintiff recover nothing against the garnishee-defendant, USF&G, and discharged garnishee from the writ.
First. Under Code section 2783, a judgment creditor can have a writ of garnishment issued against any person "indebted to the defendant therein" (referring to the judgment defendant). Miss.Code 1942 Ann. § 2783 (1956). In general, a debt or claim which is uncertain or contingent, in the sense that it may never become due and payable, is not garnishable. Under this theory, a claim for unliquidated damages cannot be reached by garnishment process. Craig v. Gaddis, 171 Miss. 379, 157 So. 684, 95 A.L.R. 1494 (1934); Travelers Ins. Co. v. Inman, 157 Miss. 810, 126 So. 399, 128 So. 877 (1930), sug. of error sustained in part and overruled in part, 157 Miss. 811, 128 So. 877 (1930); 6 Am.Jur.2d Attachment and Garnishment § 126 (1963); 38 C.J.S. Garnishment § 87 (1943). Thus an unliquidated tort liability for damages is not subject to garnishment. Blair v. Kansas City M. & B.R.R., 76 Miss. 478, 24 So. 879 (1898).
On the other hand, where there is no contingency as to the garnishee's liability, the only contingency being as to the amount of it, and where the amount of liability is capable of definite ascertainment, there is no such contingency to prevent garnishment of the claim. 38 C.J.S. Garnishment § 87 (1943). The amount of the debt must either be ascertained or capable of ascertainment by calculation or computation. Id. § 89. Accordingly, various types of insurance policies have been recognized as subject to garnishment. Nationwide Mutual Ins. Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (1964) (automobile liability); Commercial Casualty Ins. Co. v. Skinner, 190 Miss. 533, 1 So.2d 225 (1941) (public carrier's liability); Ackerman v. Tobin, 22 F.2d 541 (8th Cir.1927), cert. denied 276 U.S. 628, 48 S.Ct. 321, 72 L.Ed. 739 (1927) (robbery insurance); Meridian Land and Industrial Co. v. Ormond, 82 Miss. 758, 35 So. 179 (1903) (fire insurance); Crescent Ins. Co. v. Moore, 63 Miss. 419 (1886) (fire insurance); 22 Appleman, Insurance Law and Practice §§ 14561-67 (1947). Thus, there is no reason why in a proper case the proceeds of an employees' fidelity bond would not be subject to garnishment.
Second. The insuring agreement indemnified "the insured against any loss of money or other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees * * *" The circuit court, as the trier of fact, found that Mortgage Division suffered a loss of money through the dishonest acts of its officer, Richard C. Rogers, and that Mortgage Division was in effect the trade name or operating device for Richard C. Rogers and Company. Since the evidence supports those two findings of fact, no purpose would be served by examining in detail the evidence on these issues. In short, we conclude that American's loan correspondent in Mississippi during the fall of 1963 was Rogers & Company-Mortgage Division, a corporation. It made collections of amounts due American from borrowers, and reported them to American on stationery bearing the name of Richard C. Rogers & Company. The Mississippi loan correspondent for American, Mortgage Division, in the usual course of business frequently used the trade name of Richard C. Rogers & Company in making its reports, keeping its bank accounts, and putting collections in such bank accounts. *249 Cf. Nationwide Mutual Ins. Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (1964).
Third. The loss covered by the USF&G fidelity policy is defined in section 5 as including property owned by the insured "or held by the insured in any capacity whether or not the insured is liable for the loss thereof, or may be property as respects which the insured is legally liable." The loss occurred the moment the insured corporation lost the money from its bank account by misappropriation by its employee. Insured could have brought suit against USF&G on the bond at the time the funds were misappropriated by the employee. Thus in the fall of 1963, Mortgage Division sustained a loss of money, for which it had a claim against USF&G.
Relying on rules principally applicable to casualty insurance, appellee argues that this is an indemnity policy, and not a liability policy; that under an indemnity policy there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured; and that under an indemnity policy, the insured must have suffered an actual money loss before the insurer is liable. On the other hand, under a liability policy, a cause of action accrues when the liability attaches. See 7 Appleman, Insurance Law and Practice § 4261 (1962); 38 C.J.S. Garnishment § 110d (1943).
The bond or contract of insurance involved in this case is generally known as an employee's fidelity bond or fidelity guaranty contract. See 13 Couch on Insurance 2d §§ 46:1-2 (1965). The insurer agreed to indemnify insured from "loss of money or property" through misappropriation of an employee. Appellee asserts, in effect, that the word "loss" means a misappropriation plus a requirement that the insured pay the money thus misappropriated, and that only then the insurer is liable. This is an attenuated and unreasonable interpretation of the insuring agreement in the present policy. The insurer is liable in the event of a loss by misappropriation sustained by the obligee in the bond. That loss occurred when the misappropriation was made.
Moreover, the distinction between liability and indemnity contracts has been applied principally in the area of various types of casualty insurance. Commercial Casualty Ins. Co. v. Skinner, 190 Miss. 533, 1 So.2d 225 (1941), involved a writ of garnishment issued against the insurer of Randall, a common carrier. Skinner had previously recovered a judgment against Randall for personal injuries sustained in a collision between his car and a passenger bus owned and operated by Randall. The Commercial Casualty policy indemnified Randall "against loss from the liability imposed by law upon the Insured arising from claims against Insured for damages caused by accident * * *" The opinion in Skinner discussed the differences between a contract for indemnity against liability and indemnity against loss actually sustained. This particular casualty policy was held to be an indemnity against liability and the proceeds of the policy were held to be garnishable. The distinction made there has no application, we think, to the insuring agreement and the type of fidelity bond involved in the present case.
Fourth. During the period in which the defalcations from Mortgage Division occurred, American had a fidelity insurance policy with Insurance Company of North America. INA agreed to indemnify American for any loss of money or other property which insured should sustain through acts committed by its agent, defined as "any loan agent, or loan correspondent" while representing the insured. The bond therefore covered any failure on the part of Mortgage Division, American's agent, to remit funds held by it to American. However, the INA fidelity bond to American specifically stated that it did not afford coverage in favor of any agent; and that to the extent of payment by INA to insured, the insured would *250 assign all of its rights and causes of action to INA, thus providing for subrogation.
Shortly after American obtained its judgment against Rogers & Company-Mortgage Division in September 1964, INA paid American the amount of its loss, and immediately became its assignee and the subrogee of the judgment, entitled to all the rights and remedies of American. As authorized by Code Section 1448, this suit was brought by American, assignor to INA, for the use and benefit of INA, the subrogee. Miss.Code 1942 Ann. § 1448 (1956). Therefore, upon payment by INA to American of its loss, resulting from the defalcations by its loan correspondent, INA was entitled to be subrogated to any right of action which its insured, American, might have against a third person whose negligence or wrongful acts caused the loss.
Further, a subrogee is entitled to the benefit of all the remedies of the subrogor, and may use all of the means which the subrogor could employ to enforce payment, including garnishment. 83 C.J.S. Subrogation § 14 (1953). Subrogation contemplates full substitution and places the party subrogated in the shoes of the creditor, acquiring all the rights and remedies which the creditor has against the debtor who is primarily liable. Good v. Golden, 73 Miss. 91, 19 So. 100 (1895); Board of Sup'rs of Lauderdale County v. Alford, 65 Miss. 63, 3 So. 246 (1887); 50 Am.Jur. Subrogation § 110 (1944).
Fifth. Appellee argues that the USF&G fidelity bond provides only excess coverage and that any alleged loss already covered and paid for the bond issued by INA cannot be recovered in the present action. The USF&G policy provides that if there is "available to the insured any other insurance or indemnity covering any loss covered by this bond," USF&G shall be liable only for that part of loss in excess of the amount recoverable from such other insurance.
The insured in appellee's bond was Mortgage Division. The insured in the INA policy was American. There were different insureds, and each of the policies covered a different risk. Moreover, the INA bond provided that it did not afford coverage in favor of any agent, or for any loss through dishonest acts committed by the officers or employees of such agents. In brief, other insurance under an excess coverage clause must affect the same property, interest and risk as those in favor of the insured under the primary policy. Such similarities do not exist here. K.L.M. Distributing Co. v. Washington General Ins. Co., 215 So.2d 710 (Miss. Oct. 21, 1968); Export Leaf Tobacco Co. v. American Ins. Co., 260 F.2d 839 (4th Cir.1958); 45 C.J.S. Insurance § 922 (1946); 6 Appleman, Insurance Law and Practice §§ 3908-3909 (1942); 5 Appleman, Id. §§ 3057, 3055 (1941).
Proof of loss was filed by the judgment creditor, American, in October, 1964. The creditor was authorized under the circumstances to make proof of loss for the insured. 3 Appleman, Insurance Law and Practice § 1441 (1967); 5 Appleman, Id. § 3484 (1941); 45 C.J.S. Insurance § 982 (2) (1946). Finally, there is no pertinent issue of comparison of equities. Cf. Oxford Production Credit Assn. v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384 (1944).
In summary, although the circuit court was correct in some of its findings of fact, it erred in its ultimate conclusion of law and its dismissal of the writ of garnishment. The circuit court's judgment is reversed, and judgment is rendered here for appellant on its writ of garnishment against appellee, in the amount of its judgment plus interest against Mortgage Division.
Reversed and judgment rendered here for appellant.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.