**ALCORN BANK AND TRUST COMPANY OF CORINTH, MISSISSIPPI, Plaintiff-Appellant,**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellee.**

No. 82–4543
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 20, 1983.

James H. Mathis, Corinth, Miss., for plaintiff-appellant.

Price, Krohn & McLemore, Robert G. Krohn, Corinth, Miss., for defendant-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Alcorn Bank & Trust Company of Corinth, Mississippi (Alcorn Bank) appeals the adverse grant of summary judgment in its action for recovery on a "Stop Payment or Dishonor Liability Insurance" policy issued to it by United States Fidelity & Guaranty Company (USF & G). Concluding that Alcorn Bank's loss is not covered by the subject liability policy, we affirm.

### Facts

Alcorn Bank's comprehensive general liability insurance policy with USF & G included an endorsement entitled "Stop Payment or Dishonor Liability Insurance." Under this provision, the insurer assumed responsibility for those sums for which the bank became liable as damages in certain situations involving dishonored or stop payment checks. The endorsement reads:

The Company will pay on behalf of the Named Insured all sums which the Named Insured shall become legally obligated to pay as damages in connection with any check, note or draft, other than a "travelers check", payable by the Named Insured and drawn, made or accepted by any depositor of the Named Insured and arising out of:

(a) compliance or failure to comply with any notice to stop payment received by the Named Insured;

(b) refusal to pay or to certify such check, note or draft; or

(c) failure to give proper notice of dishonor of such check, note or draft . . . .

The policy excludes recovery for "liability arising out of dishonest or fraudulent acts of officers or employees of the Named Insured."

Alcorn Bank seeks recovery of $36,064.30 which it paid for one of its depositors, W.M. Rhodes. On May 12, 1980, Alcorn Bank received checks on Rhodes' account, payable to Aycock Equipment Company, which had been routinely processed through the Federal Reserve System. At that time, the balance in Rhodes' account was insufficient to cover the checks. On May 12 and 13, checks from Aycock Equipment Company totaling over $114,000 were deposited to Rhodes' account. As uncollected funds these deposits did not increase Rhodes' balance, which remained insufficient. Notwithstanding this inadequacy, the president of Alcorn Bank, Robert Farmigoni, approved the payment of the checks drawn against Rhodes' account.

On May 14, at the suggestion, perhaps urging, of bank examiners, Alcorn Bank attempted to improve its legal position by issuing notice of dishonor on Rhodes' checks. The effort came too late. Under both Mississippi and federal law, the checks were automatically paid through the Federal Reserve System when they were not timely dishonored. Checks received by a bank through the Federal Reserve System are considered honored by failure to meet a "midnight deadline." *See* Miss.Code Ann.

§ 75–4–302 (1972); *National City Bank v. Motor Contract Co.,* 119 Ga.App. 208, 166 S.E.2d 742 (Ga.App.1969). Although banks may avoid this automatic payment by filing a notice of dishonor before midnight of the day after receipt, no timely notice was provided by Alcorn Bank. This failure obligated the bank to honor Rhodes' checks to Aycock. Alcorn Bank seeks to recover the amount paid on the checks from its insurer, USF & G.

Alcorn Bank's suit in state court was removed by USF & G to federal court. After full discovery, both parties sought summary judgment. Concluding that the policy does not cover losses sustained by the bank but only those suffered by third persons for which the bank was liable, the court granted summary judgment to USF & G and denied the bank's motion.

### The Policy

The insurance contract before us is a comprehensive general liability policy purchased by Alcorn Bank to protect it from various liability exposures. The endorsement at issue focuses on liability arising out of errors in the handling of stop payment or dishonor notices.

Alcorn Bank correctly contends that most of the endorsement's conditions are met: the involved checks were drawn by a depositor, payable by Alcorn Bank, and the loss at issue resulted from failure to give proper notice of dishonor. Further, because of its untimely dishonor notice, Alcorn Bank was legally obligated to pay Rhodes' checks to Aycock Equipment Company.

The endorsement is express. Under the policy, USF & G agrees to "pay on behalf of [Alcorn Bank] all sums which [Alcorn Bank] shall become legally obligated to pay as damages" in certain instances involving the stop payment or dishonoring of checks, notes and drafts. The essential question is whether the money Alcorn Bank paid Aycock Equipment on Rhodes' checks constitutes "damages" within the intendment of the endorsement.

In this diversity case we apply the substantive law of Mississippi. The Supreme Court of Mississippi has provided some guidance in noting a distinction between "losses" sustained by the insured and "damages" sustained by third persons. In a garnishment action seeking payment of a judgment in a tort suit, the Mississippi court quoted this court and distinguished "indemnity against liability [to third persons]" from "indemnity against loss [by the insured]." *Commercial Casualty Ins. Co. v. Skinner,* 190 Miss. 533, 1 So.2d 225, 226 (1941) (*quoting Employers' Liability Assurance Corporation v. Bodron,* 65 F.2d 539, 540 (5th Cir.1933)). In *American National Ins. Co. v. United States Fidelity & Guaranty Co.,* 215 So.2d 245, 249 (Miss.1968), the Mississippi court referred to "the distinction between liability and indemnity contracts." This distinction between first party losses and third party damage claims is generally recognized. *See Cain v. American Policyholders Ins. Co.,* 120 Conn. 645, 183 A. 403 (1936) (coverage on liability policy does not extend to damages for injuries to the insured personally since "liability insurance . . ., as concerns the assured, is third party coverage"). *See also* 44 C.J.S. Insurance § 21 (liability insurance covers injuries sustained by others); 44 Am.Jur.2d *verbo* Insurance § 1415.

The district court concluded that the insurance contract "only encompasses losses sustained by third parties for which the bank is ultimately liable." We agree. This liability insurance policy does not extend first party protection to Alcorn Bank. That type protection may be purchased, *see* Miss. Code Ann. § 81–5–15 (1972), but it was not a part of the comprehensive general liability insurance policy USF & G issued to Alcorn Bank.

AFFIRMED.