**EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF HAWAII**, Plaintiff–Appellant, v. **REAL ESTATE FINANCE CORPORATION, DANIEL R. MATSUKAGE, PACIFIC LOAN, INC., THRIFT GUARANTY CORPORATION, NATHAN H. SUZUKI, ELMER J. MURAOKA, ELAINE F. FUKUDA**, and **JANE K. MATSUKAGE**, Defendants, and **FIDELITY AND DEPOSIT COMPANY OF MARYLAND**, Garnishee–Appellee, and **LLOYDS OF LONDON, G.T. BOWRING & CO. (INSURANCE) LTD., UNDERWRITERS AT LLOYDS LONDON, BANKERS INSURANCE SERVICE CORP., ISLAND INSURANCE COMPANY, LIMITED** and **TRANSAMERICA TITLE INSURANCE COMPANY**, Garnishees

NO. 13800

(CIV. NO. 67733)

MAY 23, 1990

PADGETT, ACTING C.J., HAYASHI, J., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, INTERMEDIATE COURT OF APPEALS JUDGES HEEN AND TANAKA, IN PLACE OF LUM, C.J., RECUSED, AND WAKATSUKI AND MOON, JJ., DISQUALIFIED, RESPECTIVELY

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from orders discharging appellee Fidelity and Deposit Company of Maryland (appellee) as a garnishee and denying plaintiff–appellant Employees' Retirement System of the State of Hawaii's (appellant) motion for examination of the garnishee. We reverse.

The chronology of the pertinent documents filed in this case is as follows:

| | |
|---|---|
| October 14, 1981 | Complaint filed by appellant against Real Estate Finance Corporation; Daniel R. Matsukage; Pacific Loan, Inc.; and Thrift Guaranty Corp. |
| March 2, 1982 | Order directing entry of final judgment against Real Estate Finance Corp. as to Count I. |
| March 12, 1982 | Motion for issuance of garnishee summons after judgment; affidavit; order; and garnishee summons, garnisheeing among others, appellee Fidelity & Deposit Company of Maryland. |
| April 6, 1982 | Appellee's garnishee disclosure which states: "That as of the time the garnishee summons issued herein was served, said Garnishee did not have nor has it now any goods or effects of Defendant Real Estate Finance Corporation in its hands nor was it otherwise indebted to said Defendant. Fidelity and Deposit Company of Maryland is the |

underwriter of Honesty Bond No. 9482520 which is payable only to the said Defendant as the insured under the Bond and not to third parties. Moreover, neither at the time the garnishee summons was served nor at any time thereafter has the insured, the Defendant herein, notified Fidelity and Deposit Company of Maryland in writing of any default on the part of any covered employee as required by the terms of the Bond."

April 8, 1982    Amended complaint, adding, among others, Elaine F. Fukuda as a defendant.

April 26, 1982    Appellee's motion to set aside the garnishee summons.

September 13, 1982    Stipulation by the parties hereto to defer hearing and ruling on the motion to set aside the garnishee summons, and on the appellant's motion for the issuance of a garnishee order. The stipulation provided that action on those motions should be deferred until after the trial of the case--in--chief, and that the garnishee summons would remain in effect until further order of the court.

| | |
|---|---|
| June 5, 1984 | Judgment against Real Estate Finance Corp. and Daniel Matsukage. |
| January 11, 1988 | Stipulated judgment against Elaine F. Fukuda. |
| November 23, 1988 | Motion for examination of appellee as garnishee. |
| December 6, 1988 | Appellee's cross–motion for discharge. |
| March 22, 1989 | Orders denying motion for examination of garnishee and granting appellee's motion to discharge garnishee. |

It appears undisputed from the facts that the appellee had issued a fidelity bond to Real Estate Finance Corporation insuring against loss by reason of dishonest acts of its president, Daniel R. Matsukage, and of its secretary, Elaine F. Fukuda, with the amount of the bond being $30,000 as to each. It also appears undisputed that the present lawsuit came about because Real Estate Finance Corporation, as agent for the appellant, collected monies on behalf of the appellant and that Matsukage and Fukuda fraudulently misappropriated those monies to an extent far exceeding $30,000 each.

HRS § 652–1 provides in part:

. . . .

(b) After judgment. . . . In any action brought by a creditor against a debtor, the creditor may, after judgment rendered in the creditor's favor, request the court to summon any garnishee to appear personally, upon a day appointed in the summons for hearing the cause as against the garnishee, and make full disclosure . . . .

. . . .

(c) Return by garnishee. Any garnishee summoned, whether before or after judgment, may file in the court

issuing the summons, on or before the return day thereof, a return under oath containing a full disclosure. A copy of the return shall be served on the plaintiff or the plaintiff's attorney on or before the return day. The filing of the return shall be deemed prima facie a compliance with the summons; provided that either party to the action may, upon written notice served upon the garnishee, require the garnishee to appear and be examined under oath as to such disclosure or as to the garnishee's liability as garnishee.

HRS § 652–10 provides:

If upon disclosure made on oath by the debtor it appears that the garnishee is indebted to the defendant, but that the debt is not payable and will not become due until some future time, then such judgment as the plaintiff may recover shall constitute a lien upon the debt until and at the time it becomes due and payable.

In *HC&D Co. v. Terrace Developers, Ltd.*, 48 Haw. 68, 395 P.2d 691 (1964), we stated:

Where, however, upon examination of the garnishee it appears from the undisputed facts that the garnishee's denial of indebtedness is an erroneous legal conclusion, a denial of indebtedness in the garnishee's return is not conclusive and "the court must pronounce the correct legal conclusion of which the undisputed facts admit."

*Id.* at 75, 395 P.2d at 697, (quoting *Bishop Trust Co. v. Furstenburg*, 28 Haw. 528, 533 (1925)).

Appellee argues that the Hawaii statutes do not permit discovery in garnishment proceedings, and that therefore the court below was correct in disregarding the clear language of the statute, which gave appellant a right to examine the garnishee. We do not agree. As we noted in *HC&D Co. v. Terrace Developers, Ltd.*, the statute clearly and explicitly provides a right, on the part of the garnishor,

to examine a garnishee, who has denied an indebtedness to the judgment creditor, and we see nothing in the statutes that prohibits appropriate discovery, under the rules of civil procedure, in preparation for such an examination. Accordingly, the court below erred in denying appellant's motion for an examination of the garnishee.

Apparently, the court below was persuaded to enter its order, denying appellant's request to examine the garnishee, by the garnishee's arguments that any indebtedness it had to the judgment creditor was contingent (1) upon establishment of the amount of the defalcation, (2) upon the giving of a proper notice by the judgment debtor, (3) upon filing of a proof of loss by the judgment debtor, and by appellee's argument that the appellant had no standing to pursue the appellee for any indebtedness it had under the bond to the judgment creditor, because of the provisions of the bond.

In the circumstances of this case, we find all of those contentions to be without merit.

It is true that under our garnishment statutes, HRS Chapter 652, the debt must be owing at the time of the service of the garnishee process upon the garnishee, and that if the debt is contingent, the garnishment lien does not attach.

It is clear from our prior decisions, however, that the contingency referred to is a contingency as to the fact of the indebtedness, not as to the amount. Thus, in *Miyashiro v. Yap*, 27 Haw. 297 (1923), whether or not the garnishee would be indebted to the judgment debtor was contingent upon the price of sugar at a time in the future, since, if sugar were below a certain price, there would be no indebtedness, and if it were above there would be. The same can be said of *Souza v. Smith*, 11 Haw. 202 (1897). In that case, the garnishee would become indebted to the judgment debtor only when the judgment debtor paid back to the garnishee certain monies advanced.

The insuring agreement in the bond in question provides:

The Underwriter, in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the Conditions and Limitations, and other terms of this bond, agrees to indemnify the Insured against loss which the Insured shall sustain and discover as provided in Section 2 of the Conditions and Limitations, resulting directly from dishonest or fraudulent acts committed by any person (a) filling any position named in the Schedule under Item 3 of the Declarations . . . not exceeding in amount, however, the Limits provided in Section 3 of the Conditions . . . .

Dishonest or fraudulent acts as used in this bond shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefit[.]

Under the conditions and limitations, the bond provides:

SECTION 14. (a) The Insured shall notify the Underwriter in writing of any default hereunder on the part of any Employee filling any position covered hereunder, as soon as practicable after discovery thereof by the Insured, or by any partner or officer thereof not in collusion with such Employee. Such notice shall set forth the name and address of the Employee causing such loss and the position filled by such Employee.

(b) Within ninety (90) days after discovery as afore-said, of any default hereunder, the Insured shall file with the Underwriter affirmative proof of loss, itemized and duly sworn to, on proof of loss form in use by the Underwriter, and shall, if requested by the Underwriter, produce from time to time, for examination by its

representatives, all books, documents and records pertaining to such loss.

(c) Any suit to recover against the Underwriter on account of loss hereunder shall be brought before the expiration of twelve (12) months from the discovery, as aforesaid, of such default.

(d) If any limitation herein for giving notice, filing proof of loss or bringing suit is prohibited or made void by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

The first question to be addressed is whether or not on the date of the garnishee summons, the appellee was indebted to the judgment debtor. Under the language of the insuring agreement, it seems clear that, as was said in the very similar case of *American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So. 2d 245, 249 (Miss. 1968):

The loss occurred the moment the insured corporation lost the money from its bank account by misappropriation by its employee.

There appears to be no factual dispute that the defalcations of the president and secretary of Real Estate Finance Corporation had occurred prior to the date of garnishment, since this lawsuit was, itself, engendered by Real Estate Finance Corporation's inability to pay back to the appellant appellant's monies which it held, because its employees had fraudulently misappropriated those monies.

Since the loss had occurred, appellee was liable to Real Estate Finance Corporation on the date of garnishment.

Again quoting from *American National Insurance Co.*:

In general, a debt or claim which is uncertain or contingent, in the sense that it may never become due and payable, is not garnishable. Under this theory, a claim for unliquidated damages cannot be reached by garnishment

process. . . . Thus an unliquidated tort liability for damages is not subject to garnishment. . . .

On the other hand, where there is no contingency as to the garnishee's liability, the only contingency being as to the amount of it, and where the amount of liability is capable of definite ascertainment, there is no such contingency to prevent garnishment of the claim. . . . The amount of the debt must either be ascertained or capable of ascertainment by calculation or computation. . . . Accordingly, various types of insurance policies have been recognized as subject to garnishment. . . . Thus, there is no reason why in a proper case the proceeds of an employee's fidelity bond would not be subject to garnishment.

215 So. 2d at 248 (citations omitted).

Where, as here, the bond limit of liability was $30,000 each, as to the president, and secretary, and there is no dispute that each of their defalcations far exceeded that amount, there is no contingency which defeats the garnishee process.

Appellee argues that it did not receive from Real Estate Finance Corporation timely notice, and a timely proof of loss. It does not appear to be disputed, however, that Real Estate Finance Corporation was in the control of its president and secretary, the two people who committed the defalcations, and it seems somewhat unlikely that they would have timely given notice of their defalcations, or submitted proofs of loss resulting from those defalcations.

A similar argument was made to this court in *Waterhouse Trust Co. v. Home Insurance Co.*, 27 Haw. 572 (1923), where the insurer set up, as a complete defense to the action, the failure to submit timely notice of the defalcations. This court noted that the corporate officers, who were guilty of the defalcations, were the only persons who had knowledge of them within the time period

set forth in the bond, and, citing numerous cases to the same effect, held that in such circumstances, the failure to timely give notice and file proof of loss was not a defense.

We hold that, in the circumstances of this case, appellee has not established, as a matter of law, a complete defense to its obligations under the bond, because of the lack of notice, and lack of proof of loss, from the judgment debtor, Real Estate Finance Corporation.

We agree with the Mississippi court in *American National Insurance Co.* that in a proper case, garnishment process can reach an insurer's liability under a fidelity bond.

Accordingly, it was error for the court below to discharge the garnishee, prior to the garnishee's examination.

Our garnishment statutes were adopted originally in 1876 and, from a procedural standpoint, have largely remained unchanged since that time. On the other hand, our modern rules governing civil practice and procedure were first adopted in 1954. Appellee heavily relies upon *Theo H. Davies & Co. v. Hilo Pineapple Co.*, 27 Haw. 651 (1923), for its position that once it has denied an indebtedness, the garnishor cannot further proceed. The ruling in that case has, however, been extensively modified, as is pointed out in *HC&D Co. v. Terrace Developers, Ltd., supra.* In our view, under modern practice, in a fidelity bonding situation, where, as here, the existence of the bond has been admitted, and the defalcations established by the judgments on the record, the garnishor and garnishee are entitled to a hearing, where any of the other defenses that the garnishee may have can be adjudicated.

In this particular case, the defalcations had not been established, on the record, at the time that the garnishee summons was issued, and at the time the motion for discharge was originally made. However, the parties stipulated to continue the pending motions with respect to the garnishment, without prejudice to their legal positions, until the case–in–chief should have been decided. When the orders below were entered, the fact of defalcation, and

the fact that the defalcations exceeded the amount covered in the bond, had apparently been established by judgment. That being the situation, the examination of the garnishee should have been allowed to proceed, and thereafter any remaining issues should have been decided, at a hearing, where evidence on those issues could be adduced by the parties. Reversed and remanded for further proceedings in accordance herewith.

*H. William Burgess*, Special Deputy Attorney General, for appellant ERS.

*Kelvin H. Kaneshiro* (*Wesley H.H. Ching* with him on the brief; Reinwald, O'Connor, Marrack, Hoskins & Playdon, of counsel) for appellee Fidelity.